[Crim. No. 10392. Third Dist. Sept. 29, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD FINNEY, Defendant and Appellant.

COUNSEL

Jean Klingensmith, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and Thomas D. McCrackin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SAKUMA, J.*—A jury convicted defendant of two counts of assault on a peace officer with a deadly weapon and by means of force likely to produce great bodily injury. (Pen. Code, § 245, subd. (b)),[1] a third count of reckless driving (Veh. Code, § 23103), and a fourth count of

---

*Assigned by the Chairperson of the Judicial Council.

[1]Penal Code section 245, subdivision (b) provides: "Every person who commits an assault with a deadly weapon or instrument or by any means likely to produce great

attempt to evade a pursuing peace officer (Veh. Code, § 2800.1). For the reasons which follow, we affirm the judgment.

Defendant was convicted of felonious assaults on Officers Peterson and McDade (counts I and II respectively), reckless driving (count III), and violation of Vehicle Code section 2800.1 (count IV).

On the night of August 20, 1978, Colusa County Sheriff's Officer Peterson stopped a green Oldsmobile Toronado on Interstate 5 to investigate a theft which had been reported by police broadcast in the town of Williams, about 20 miles to the north. The Oldsmobile matched the description of the vehicle involved in the theft.

Defendant was the driver of the stopped Oldsmobile in which were also two passengers; defendant had no driver's license. Peterson was in uniform and was driving a marked patrol car. As the officer was preparing a citation, defendant sped away southbound on Interstate 5. With red lights and siren operating, Peterson pursued defendant at speeds ranging from 40 to 100 miles per hour.

Near Woodland, Peterson caught up with the Oldsmobile and lightly tapped its rear bumper to persuade defendant to slow down or pull over. Defendant did not respond. Peterson then attempted to pass defendant in the fast lane, but defendant rammed Peterson's patrol car, causing it to spin out of control across the slow lane and off the freeway. After regaining control, Peterson resumed pursuit.

South of Woodland, two Yolo County Sheriff's units, a California Highway Patrol unit, and a California Highway Patrol helicopter had joined the chase. When Yolo County Sheriff's Officer Garcia entered the freeway at State Route 16, his patrol unit with lights and siren activated was slightly ahead of defendant and Peterson. As defendant came alongside Garcia's vehicle, defendant veered into its left side, causing the officer to lose control and be forced off the road. When Garcia recovered control of his vehicle, he advised his dispatcher that defendant had just rammed his vehicle off the freeway and was "now wanted for assault with a deadly weapon on a peace officer."

---

bodily injury upon the person of a peace officer or fireman, and who knows or reasonably should know that such victim is a peace officer or fireman engaged in the performance of his duties, when such peace officer or fireman is engaged in the performance of his duties shall be punished by imprisonment in the state prison for three, four, or five years."

Approaching the Sacramento River, Officer Peterson again caught up with defendant and attempted to pass him in the fast lane. Defendant again struck Peterson's vehicle, but Peterson this time maintained control and managed to move in front of and slow down defendant's fleeing vehicle. In the meantime, Officer Garcia closed in on the slowing vehicles and tried to force defendant off the road; he was unsuccessful. Instead, defendant veered into Garcia's vehicle and caused Garcia to lose control momentarily. Defendant then gained speed and attempted to push Peterson's vehicle out of the way with his own. Peterson eventually moved aside and defendant moved ahead once again.

Near the Sacramento airport, Peterson made a final attempt to pass defendant, but defendant rammed Peterson's vehicle for a third time. The collision was so forceful that Peterson spun completely out of control and came to rest among the oleanders in the center divider.

One hundred yards ahead of defendant and the pursuing patrol cars, a second California Highway Patrol unit driven by Officer McDade joined the chase at State Route 70. As defendant came alongside McDade's marked, light-flashing patrol car, he swerved from his own lane and struck the right side of McDade's vehicle. McDade dropped back, regained control, and forcefully struck defendant's vehicle. This time defendant was the one who spun out of control and landed in the freeway's northbound lane.

Officers surrounded defendant's stopped vehicle and ordered its occupants out with their hands up. Defendant failed to comply; he remained in his seat and waved at the officers with his right hand. The officers were apprehensive that defendant might be armed because he kept his left hand hidden from view between the door and the seat. Yolo County Sheriff's Officer Justus attempted to open the driver's door, but it was either locked or jammed shut from damage. Justus then stepped up and struck defendant on the forehead with the barrel of his shotgun. Other police officers removed defendant through the passenger door.

During the chase, defendant had driven erratically by weaving back and forth between the southbound lanes at varying speeds. When the patrol cars backed off, however, his driving pattern was straight. Although successively hitting marked patrol vehicles, defendant had passed more than 20 civilian vehicles without hitting them.

Defendant testified that he had been drinking heavily the night of the chase and had sped away during the initial stop because he was concerned about what was going to happen to him for having stolen the beer. He claimed that Peterson, in addition to bumping his fender, was the one who first swerved into him and that sometime thereafter he had suffered an alcoholic blackout and did not remember being involved in any subsequent collisions. He admitted having been convicted of grand theft, a felony.

DISCUSSION

I

First, we disagree with defendant's contention that the trial court erred in failing on its own motion to instruct the jury that it could find defendant guilty of the lesser included offenses of simple assault (Pen. Code, § 240) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)). Court and counsel met in chambers to discuss the proposed jury instructions. At that time, defense counsel requested and received instructions in support of theories that defendant had acted in self-defense, that the officers had used excessive force, and that defendant's conduct had been merely reckless and therefore did not constitute an intentional assault. Defense counsel also informed the court that as a matter of trial tactics he did not want the jury instructed on any lesser included offenses. Thus error, if any, in omitting the lesser included offenses was invited by defense counsel. (*People v. Sedeno* (1974) 10 Cal.3d 703, 716, fn. 6 [112 Cal.Rptr. 1, 518 P.2d 913]; *People v. Phillips* (1966) 64 Cal.2d 574, 580-581, fn. 4 [51 Cal.Rptr. 225, 414 P.2d 353].)

II

Defendant's claim that his trial counsel was incompetent in not submitting instructions on the lesser included offenses also fails. As we have seen, counsel tactically chose not to submit the lesser included offense instructions on simple assault (Pen. Code, § 240) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)).

With regard to simple assault, counsel could not have chosen otherwise. Defendant's use of his vehicle to hit the patrol cars was necessarily by means of a force likely to cause great bodily injury and this precluded the conviction of the lesser crime of simple assault. Defen-

dant either assaulted the officers with the automobile or he did not assault the officers at all. (See *People v. Berry* (1976) 18 Cal.3d 509, 519 [134 Cal.Rptr. 415, 556 P.2d 777].)

Although the other lesser crime of assault with a deadly weapon was potentially at issue, since one defense theory was that the officers had exceeded the scope of their duties (*People v. Hood* (1969) 1 Cal.3d 444, 450 [82 Cal.Rptr. 618, 462 P.2d 370]), defendant has not demonstrated on the face of the appellate record that counsel's decision was not an informed tactical choice within the range of a reasonable attorney's competence. (*People v. Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859].) Defendant may well have decided to rest his case on the all-or-nothing gamble that he was guilty of the assault on a peace officer or not guilty at all. We do not deem it our function on appeal to second guess the underlying reasons for counsel's choice where a habeas corpus petition is available fully to explore such reasons. (*People v. Pope, supra*, 23 Cal.3d at p. 426; *People v. Frierson* (1979) 25 Cal.3d 142, 158 [158 Cal.Rptr. 281, 599 P.2d 587].)

### III

Defendant also contends that he was denied effective representation because his trial counsel failed to raise voluntary intoxication as a defense to counts I, II, and IV.

■ As to count IV, the court correctly instructed the jury that defendant's state of intoxication was relevant in determining whether defendant had the specific intent necessary to convict him of an attempt to evade a pursuing peace officer. On appeal, we will not indulge in speculation as to why counsel did not introduce into evidence defendant's blood alcohol level of .27 percent on the night in question. (*People v. Pope, supra*, 23 Cal.3d at p. 426.)

■ As to counts I and II, the court properly instructed the jury that voluntary intoxication was *not* a defense to assault with a deadly weapon on a peace officer where, as here, the facts show that the defendant "reasonably should know" that his victims are police officers. A defendant's voluntary intoxication is no defense to the general intent crimes of simple assault or assault with a deadly weapon. (*People v. Hood, supra*, 1 Cal.3d 444; *People v. Rocha* (1971) 3 Cal.3d 893, 896-899 [92 Cal.Rptr. 172, 479 P.2d 372]; *People v. Kelly* (1973) 10 Cal.3d 565, 573-574 [111 Cal.Rptr. 171, 516 P.2d 875]; *People v. Windham* (1977)

19 Cal.3d 121, 130-131 [137 Cal.Rptr. 8, 560 P.2d 1187]; Pen. Code, § 22.) Under the same rationale, we also conclude that defendant's voluntary intoxication will not negate an alternate mental element required for an assault on a peace officer under Penal Code section 245, subdivision (b).

In *People* v. *Hood, supra,* 1 Cal.3d 444, a defendant specifically had been charged with the crime of assault with a deadly weapon on a peace officer. Without the necessity at that time of reaching the question of whether assault constituted a specific intent crime,[2] the Supreme Court furnished guidance on retrial of the charge that a person who voluntarily becomes drunk should not escape the consequences of criminal responsibility for "assault with a deadly weapon on a peace officer or any of the lesser assaults included therein." (*Hood, supra,* 1 Cal.3d at pp. 458-459.) Such guidance was an attempt to reconcile the competing theories that, on the one hand, the moral culpability of a drunken criminal is often less than a sober one and, on the other hand, a person who voluntarily becomes drunk and commits a crime in such state should not escape its consequences. (*Id.,* at p. 455.) The court, however, did not mention the additional mental element required for assault on a peace officer which distinguishes it from the lesser included assaults, i.e., that a defendant "knows or reasonably should know" that his victim is a peace officer engaged in the performance of his duties.

In *People* v. *Garcia* (1967) 250 Cal.App.2d 15 [58 Cal.Rptr. 186], this court, focusing only on the element of *knowledge,* held that intoxication was a defense to that element because "[i]ntoxication has obvious relevance to the question of awareness, that is, the ability to recognize and comprehend." (Fn. omitted.) (*Id.,* at pp. 20-21.) But *Garcia* did not consider the relation of intoxication to the alternate element, that the defendant "reasonably should know" that his victim is a peace officer.

Penal Code section 22 has long provided that voluntary intoxication is no excuse to a crime except to negate particular mental elements of a crime such as purpose, motive, or intent. Since subdivision (b) of section 245, authorizes a defendant's conviction upon an alternate showing of culpable ignorance, i.e., that defendant "reasonably should know" the officers' identities, defendant's unawareness of the officers' identities

---

[2]It was not until *Rocha, supra,* 3 Cal.3d at pages 897-899, that the Supreme Court definitively determined assault to be general intent crime.

due to self-induced intoxication is immaterial when a sober person would have been aware of their identities. (See Wharton's Criminal Law, § 108, p. 64; 10 West's U.Laws Ann. (1974) Model Penal Code, § 2.08, subd. (2).)[3] Such an objective standard does not rise to the level of the subjective mental elements set forth in Penal Code section 22. As a matter of public policy, defendant's voluntarily becoming intoxicated to the extent of his being unable to perceive the identities of uniformed peace officers driving marked patrol cars with lights and sirens operating is sufficiently culpable conduct to warrant criminal liability for the crime of assault with a deadly weapon on a police officer. (See Wharton's Criminal Law, *supra.*)

Where the defendant is charged alternately both that he knew and reasonably should know that the victims are peace officers, instructions are required to delineate the relevance of intoxication where knowledge is at issue. But the facts here show that the defendant reasonably should have known his victims were peace officers. Accordingly, it was not error to fail to instruct the jury on counts I and II on the relevance of voluntary intoxication, and the claim of incompetency of counsel relating thereto must fail.

## IV

Defendant claims he was denied a fair trial because the court received the jury verdicts in a "piecemeal" fashion. ■ However, there was no error in the jury separately returning verdicts on separately charged counts when its deliberations were concluded as to some but not all counts. (*People* v. *Rigney* (1961) 55 Cal.2d 236, 246-247 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186]; see also Witkin, Cal. Criminal Procedure (1963) § 540, p. 551; *People* v. *Remiro* (1979) 89 Cal.App.3d 809, 820-821 [153 Cal.Rptr. 89].) The jury began deliberating late one afternoon and notified the court the same day that it had reached verdicts on three counts but requested reinstruction as to the fourth count. The court received the three already signed and dated verdicts and then gave the jury the requested instructions on the fourth count. Counsel then stipulated that the jury could return the following

---

[3]Subdivision (2) of the model code section provides: "When recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of the risk of which he would have been aware had he been sober, such unawareness is immaterial."

day for deliberation on the remaining count. Not until the following day did defendant object to the "piecemeal taking of the verdicts."

### V

■ Because assault on Officer Garcia was not a charged offense, defendant claims prejudicial error in the admission of evidence for the limited purpose to establish "motive, opportunity, intent, identity, plan, or absence of mistake or accident" that defendant had rammed Officer Garcia's vehicle during the chase. We find no error in introducing evidence of the Garcia episode. Although the general rule is that evidence of a defendant's other crimes or misconduct is inadmissible to prove the defendant's criminal disposition or propensity to commit the crimes charged, well-established exceptions to the general rule permit such evidence when relevant to prove some specific element of the crime charged. (Evid. Code, § 1101; *People v. Kelley* (1967) 66 Cal.2d 232, 238-239 [57 Cal.Rptr. 363, 424 P.2d 947].) Here, the manner in which defendant rammed his vehicle into Officer Garcia's patrol car tended to prove defendant was engaged in a continuous course of conduct in which he reasonably should have known the individuals he assaulted were peace officers and also tended to rebut defendant's defense of mere reckless conduct. Thus, the admission of the disputed evidence was within the sound discretion of the trial court. (*People v. Matson* (1974) 13 Cal.3d 35, 40 [117 Cal.Rptr. 664, 528 P.2d 752].)

### VI

Defendant's contention that the jury verdicts of assault with a deadly weapon on police officers are unsupported by substantial evidence also must be rejected. ■ The appellate standard for reviewing a criminal conviction is whether substantial evidence supports a determination by a trier of fact that the People sustained their burden of proving a defendant guilty beyond a reasonable doubt. (*People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]; *People v. Reyes* (1974) 12 Cal.3d 486, 496-497 [116 Cal.Rptr. 217, 526 P.2d 225].) Under this substantial evidence test, the reviewing court must view the evidence in a light most favorable to the People and must draw all reasonable inferences in support of the verdict. (*People v. Culver* (1973) 10 Cal.3d 542, 548 [111 Cal.Rptr. 183, 516 P.2d 887].) The recent United States Supreme Court case of *Jackson v. Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781] does not compel a more

stringent standard of review. (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 365 [157 Cal.Rptr. 769].)

■ Here, ample evidence supports the jury findings that defendant assaulted Officers Peterson and McDade with a deadly weapon in violation of Penal Code section 245, subdivision (b). Defendant's continuous course of conduct in repeatedly ramming well-marked patrol cars while otherwise avoiding civilian vehicles strongly supports the jury's implied finding of the general intent required for an assault; merely because such evidence may not be inconsistent with mere recklessness does not compel an inference thereof. (*People* v. *Rocha, supra,* 3 Cal.3d 893.)

Defendant's contention that he had a right to defend himself because the officers acted in excess of their authority cannot be supported on appeal. The jury was entitled to disbelieve defendant's testimony and conclude that the officers used the minimum force necessary in the performance of their duty to arrest defendant. Indeed, the overwhelming evidence reveals defendant was the one who, at every juncture, escalated the amount of force necessary to effect his arrest.

## VII

Defendant claims an error in the computation of behavior and participation credits attributable to his presentence time in local custody. (*People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874].) If so entitled, the computation of such conduct credits is, with respect to a defendant who has already been sentenced, an administrative function to be performed by the Department of Corrections. (*People* v. *Sage, supra;* see also Cal. Dept. of Corrections, Admin. Bull. 80/11.)

The judgment is affirmed.

Puglia, P. J., and Blease, J., concurred.

A petition for a rehearing was denied October 27, 1980, and appellant's petition for a hearing by the Supreme Court was denied December 10, 1980.