[Crim. No. 13032. Fourth Dist., Div. One. Oct. 8, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
CLEO BILLINGS, Defendant and Appellant.

COUNSEL

Ronald M. McCormick, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Lillian Lim Quon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MALKUS, J.*—In the evening of May 1, 1980, a pump unit of the City of San Diego Fire Department was dispatched to a fire reported at

---

*Assigned by the Chairperson of the Judicial Council.

1603 Donax Street, in Imperial Beach. Upon representatives of the fire department entering the residence, fire damage and dark smoke was observed followed by the discovery of the body of Louis Bowling, a 68-year-old retired Army Captain who resided there. A forensic psychologist employed as a pathologist by the office of the Coroner of the County of San Diego testified the cause of death was stab wounds to Mr. Bowling's left chest and further testified that Bowling had been struck several times about the head causing breaks about the cheeks, forehead, chin, jaw and back of the head, including a fracture of the nose and upper jaw, and portions of the body had been singed and charred by fire, which fire, in the opinion of an arson expert, who so testified, was started by an inflammable liquid being poured and then ignited between Bowling's legs.

A jury found Cleo Billings guilty of the murder of Louis Bowling in violation of Penal Code section 187 and also found Billings guilty of burning an inhabited structure in violation of Penal Code section 451, subdivision (b). After the denial of a motion for new trial, Billings was sentenced to the term prescribed by law of 25 years to life for the murder of Bowling and an additional year for being armed with a deadly weapon. He was also sentenced concurrently to the term of five years for arson. Cleo Billings appeals.

Billings contends the trial court erred in not instructing, *sua sponte*, he must have had the intent to commit the underlying felony prior to acts resulting in Bowling's death; the trial court erred in not instructing, *sua sponte*, if the jury had a reasonable doubt as to the commission of the underlying felony, defendant could not be convicted of felony murder; the evidence at trial was not sufficient to convict Billings of first degree murder on the theory of premeditation and deliberation of felony murder; Billings was denied effective assistance of counsel because of failure of counsel to request an instruction on felony murder; he was denied effective assistance of counsel because counsel did not object to the prosecution's calling a confidential psychotherapist as a witness; he was denied effective assistance of counsel by his counsel's agreeing to the use of a dictionary by the jury during jury deliberations; and, the introduction of a dictionary into the jury deliberation process constituted jury misconduct.

It is our determination the trial court did not err in its instructions to the jury. ■ In determining whether error has been committed in giving or not giving jury instructions, the reviewing court must consider

the instructions as a whole. The court must also assume that the jurors are intelligent beings and capable of understanding and correlating all instructions which are given to them. (*People* v. *Yoder* (1979) 100 Cal.App.3d 333 [161 Cal.Rptr. 35].) ■ It is the trial court's duty to instruct the jury as to the general principles of law relevant to the issues raised by the evidence. (*People* v. *Evans* (1980) 112 Cal.App.3d 607 [169 Cal.Rptr. 240].) Otherwise stated, it is clear that in criminal cases, even in the absence of a request by counsel, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence and the general principles of law governing the case are those principles closely and openly connected with the facts before the court and which are necessary for the jury's understanding of the case. (*People* v. *Roberts* (1975) 51 Cal.App.3d 125 [123 Cal.Rptr. 893].) It is equally as clear that the court is under no obligation to instruct on its own motion as to specific points of evidence. (*People* v. *Atkins* (1975) 53 Cal.App.3d 348 [125 Cal.Rptr. 855].)

■ Billings contends the trial court had a *sua sponte* obligation to instruct the jury the felony-murder rule had no application to his case if he had formed the intent to steal or to commit a robbery after the acts which caused Bowling's death. ■ He also contends the court had a similar obligation to instruct the jury the underlying felonies of burglary and robbery must be proved beyond a reasonable doubt for purposes of finding him guilty of first degree murder under the felony-murder theory. ■ While a defendant, upon proper request, has the right to an instruction directing the jury's attention to evidence from the consideration of which reasonable doubt of guilt could be engendered (*People* v. *Guillebeau* (1980) 107 Cal.App.3d 531 [166 Cal.Rptr. 45]), the trial court has a duty to refrain from instructing on principles of law which are irrelevant to the issues raised by the evidence and which would have the effect of confusing the jury. (*People* v. *McNeill* (1980) 112 Cal.App.3d 330 [169 Cal.Rptr. 313].)

■ The jury instructions which Billings asserts the court should have made *sua sponte* would have had the effect of confusing the jury. The instructions, read as a whole, indicate the jury was properly instructed in murder of the first degree under a felony-murder instruction required the killing occur both as a result of, the commission of or attempt to commit the crime of robbery or burglary. The court's instructions included definitions of the specific mental state required to commit or attempt to commit the crime of robbery or burglary. This constitutes an appropriate statement of the law and the principles of law ap-

plicable in this case. Moreover, these instructions relating to the felony-murder aspect of the case precluded conviction if the jury were of the mind Billings decided to burglarize or rob Bowling's property only after his death had occurred.

■ The trial court correctly and adequately instructed the jury a murder of the first degree based on the unlawful killing of a human being which occurs as a result of the commission of or attempt to commit the crime of robbery or burglary and where there was in the mind of the perpetrator the specific intent to commit such crime, must be proved beyond a reasonable doubt. In the absence of a specific request by a counsel concerning a reasonable doubt instruction related to whether a murder occurred in the perpetration or attempt to perpetrate such underlying felonies, no such instruction was required to be given *sua sponte.* (*People* v. *Whitehorn* (1963) 60 Cal.2d 256 [32 Cal.Rptr. 199, 383 P.2d 783]; *People* v. *Guillebeau, supra,* 107 Cal.App.3d 531.) The trial court did not have a *sua sponte* duty to instruct the defendant had to have the intent to commit the underlying felony prior to or during the acts resulting in the victim's death or he could not be convicted of first degree felony murder or that if the jury had a reasonable doubt that the underlying felony had been committed, the defendant could not be found guilty of first degree felony murder.

■ Billings contends the evidence at trial was insufficient to convict him of first degree murder on the theory of premeditation and deliberation or felony murder. We do not agree. ■ On appeal from a criminal conviction, it is the function of the appellate court to determine whether a reasonable trier of fact could have found the prosecution sustained its burden of proving defendant guilty beyond a reasonable doubt and not to reweigh the evidence. (*People* v. *La Fontaine* (1978) 79 Cal.App.3d 176 [144 Cal.Rptr. 729].) ■ Our test in this case is whether substantial evidence supports the determination by the jury as trier of fact that the People sustain their burden of proving Billings guilty beyond a reasonable doubt. Under this test, we are required to view the evidence in a light most favorable to the People and must draw all inferences in support of the verdict. (*People* v. *Finney* (1980) 110 Cal.App.3d 705 [168 Cal.Rptr. 80]; *People* v. *Jackson* (1980) 110 Cal.App.3d 560 [167 Cal.Rptr. 915].)

Our review of the evidence indicates that Billings was observed approximately 30 to 45 minutes prior to the fire department's units being dispatched to Mr. Bowling's house walking outside the house and to-

wards the house. Mr. Bowling's partially burned body was discovered on the floor in the living room approximately 10-12 feet from the front door where a pool of blood was found by the officers who arrived at the scene in response to the fire. The forensic pathologist testified that Bowling's nose was fractured and his upper jaw was broken. The pathologist testified that breaks discerned about the jaw, eyes and head were the result of blows suffered at the front door area of the house. The pathologist testified that the blows to the head were delivered by an instrument similar to the pistol that belonged to the victim and which was later recovered from Billing's sister-in-law, and the blows were of such a nature as to render Bowling unconscious or at least stunned. The evidence produced at trial established that Mr. Bowling, while still alive, was dragged from the front door area into the front room where he was stabbed six or seven times at a time when he was most likely unconscious from the blows that he received earlier. The fire department's investigator testified that the fire to which the fire department had responded had been ignited between Mr. Bowling's legs as he lay on the floor in the front room. The pathologist testified the burn wounds were serious enough to have independently caused death in the absence of the other injuries suffered by Mr. Bowling which the pathologist indicated did, in fact, cause death.

Evidence introduced at trial indicated the decedent was known as a friendly and generous man who would often lend money to his friends and he and Billings were friends. A few days prior to May 1 Billings lost his employment. In the evening of May 1, 1980, the same day upon which Mr. Bowling breathed his last breath, Billings appeared at his sister-in-law's home with blood on his clothes and hands and a broken pistol tucked in his waist band. Billings told his sister-in-law that he had been in a fight and had to stick someone. He gave the pistol to her and later when he sought the return of the gun, he struck her and fled when she threatened to call the police. On May 2, 1980, Billings admitted to his sister that he had killed someone.

At the time when the fire department units arrived, one of the speakers to Mr. Bowling's stereo set was found on the bed of a pickup truck in the rain and the other was found inside the residence.

While evidence was before the court indicating that Billings had been drinking alcoholic beverages on the very day Mr. Bowling was killed, expert testimony indicated even while under the influence of alcohol Billings was still capable of conscious, planned behavior.

We determine from the evidentiary recitals set out above substantial evidence does support Billings' first degree murder conviction on the basis he willfully and deliberately and with premeditation killed Louis Bowling and also supports the murder conviction on the basis the killing was a result of the commission or attempted commission of robbery or burglary. We are satisfied upon our review of the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence, which is evidence that is credible and of solid value, from which a rational trier of fact could have found defendant guilty beyond a reasonable doubt, that there does indeed exist, and was, substantial evidence to support the verdict and judgment entered thereon. It is not our function to replace the jury but to satisfy ourselves that their verdict is reasonable. (*People v. Mathews* (1980) 102 Cal.App.3d 704 [162 Cal.Rptr. 615].)

Billings next raises the issue of denial of the right to effective assistance of counsel. Billings urges the failure of his defense counsel to request an instruction of the time when felonious intent is required to exist in order to prove felony murder, the failure of defense counsel to object to the district attorney's calling as a witness a psychotherapist who had examined Billings pursuant to Evidence Code section 1017 and defense counsel's agreeing to permit the jury to use a dictionary during its deliberations, in each instance denied him the effective assistance of counsel within the meaning of the Sixth Amendment. ■ In *People v. Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859], a decision cited both by Billings and the People, the Supreme Court stated a defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate or the ordinary prudent lawyer. The Supreme Court held the standard of reasonably competent representation affords a measurable guide for evaluating the quality of trial counsel's decision making. In order to establish a successful claim of inadequate trial representation in a criminal prosecution, defendant must prove counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense. Defendant must affirmatively show the omissions of defense counsel involved a crucial issue and cannot be explained on the basis of any knowledgeable choice of tactics. (*People v. Jackson* (1980) 28 Cal.3d 264 [168 Cal.Rptr. 603, 618 P.2d 149].)

■ Insofar as the first alleged omission is concerned, we have already determined the jury was adequately and correctly instructed.

■ Insofar as the second contention of incompetency of counsel is concerned, the reporter's transcript reveals the doctor who examined Billings pursuant to Evidence Code section 1017, and whose testimony clearly could have been excluded by the assertion of the privilege of confidentiality, testified not only that Billings could form the intent to steal and the intent to kill but also in his opinion did not have the capacity to premeditate or reflect upon the gravity of his behavior. This doctor testified Billings would have responded with an explosive and angry rage which could have removed all considerations from his conscious state of mind concerning his duty to act within the law in connection with an altercation between himself and the decedent. Moreover, the doctor testified he had observed no indications whatsoever of Billings feigning amnesia while testifying as well concerning Billings' past history of drinking and alcoholic blackouts.

Testimony of this medical expert provided some testimony favorable to the prosecution as well as testimony favorable to the defense. Counsel's failure to object to the doctor's testimony was a matter which undoubtedly involved a tactical decision on counsel's part. The indiscriminate use of objections, solely because they are available, aids neither the client nor the cause of justice. (*People* v. *Jackson, supra*, 28 Cal.3d 264.) Under the facts and circumstances discussed we are not satisfied Billings has sustained his affirmative burden of establishing exclusion of the medical witness' testimony could have amounted to the withdrawal of a potentially meritorious defense. (*People* v. *Childs* (1980) 112 Cal.App.3d 374 [169 Cal.Rptr. 183].)

■ Billings contends defense counsel was incompetent for permitting the jury access to a dictionary during the course of its deliberations. Billings suggests this constitutes a form of private communication, contact or tampering, directly or indirectly, with the jury during trial, and is therefore presumptively prejudicial, citing *People* v. *Honeycutt* (1977) 20 Cal.3d 150 [141 Cal.Rptr. 698, 570 P.2d 1050]. Billings also suggests this dictionary constituted the presence of an alternate, though silent, juror during deliberations, citing *People* v. *Adame* (1973) 36 Cal.App.3d 402 [111 Cal.Rptr. 462]. Neither of those cases constitute precedent concerning the permitted and stipulated use of a dictionary during the jury's deliberations. As already indicated, the jury was adequately and properly instructed. We presume the jury followed the instructions (*People* v. *Anderson* (1968) 70 Cal.2d 15 [73 Cal.Rptr. 550, 447 P.2d 942]), and once again, we are satisfied Billings has not affirmatively established the access by the jury for whatever purpose it

chose to utilize the dictionary so provided to them resulted in the withdrawal of a potentially meritorious defense. We conclude Billings was not denied the effective assistance of counsel which is his constitutional right guaranteed to him by the Sixth Amendment of the United States Constitution and article I, section 15 of the California Constitution.

█ The final assertion of error by Billings is jury misconduct occurred by reason of the jury being given access to a dictionary. While this issue has already been discussed at much greater length than it merits, we observe the receipt of a dictionary by the jurors pursuant to their request, and only after counsel for the People as well as Billings had agreed to it, is not misconduct of any kind whatsoever. The record does not reflect what use if any the jury or any member of the jury made of the dictionary during their deliberations, other than the bare showing deliberations began at 2:47 p.m. on October 28, 1980, were renewed at 9 a.m. on October 29, 1980, and at 9:45 a.m. on October 29, 1980, by way of a written request the jury foreman requested a dictionary be sent to the jury room which was done only after the court contacted counsel for each side and each had agreed thereto. While we are inclined to think of the use of a dictionary by the jury to be in the same category as a jury's use of a magnifying glass, perhaps for the purpose of constituting more critical examination of the instructions, any objection defense counsel may have had to this type of examination was waived by his consent to the use of the dictionary. (*People* v. *Reyes* (1974) 12 Cal.3d 486 [116 Cal.Rptr. 217, 526 P.2d 225].) Indeed, is not the use of a dictionary as much an extension of the jury's sense of sight or understanding as would be the use of a magnifying glass? (*People* v. *Turner* (1971) 22 Cal.App.3d 174 [99 Cal.Rptr. 186].)

For the foregoing reasons, the judgment of the trial court is affirmed.

Cologne, Acting P. J., and Staniforth, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 27, 1982.