Filed 1/25/16  P. v. Phillips CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

JOHN ULYSUS PHILLIPS,

    Defendant and Appellant.

E062342

(Super.Ct.No. FSB1401309)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Elia V. Pirozzi, Judge.  Affirmed.

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel, Donald W. Ostertag, and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

## INTRODUCTION

Defendant John U. Phillips appeals from judgment entered following a jury conviction for being a felon in possession of a firearm.[1] Defendant's conviction was based on evidence obtained by police officers during a detention and patdown search of defendant. Before his jury trial, defendant filed a motion to suppress the evidence under section 1538.5. The trial court denied his motion and the jury found defendant guilty of being a felon in possession of a firearm. The trial court sentenced defendant to three years in prison.

Defendant contends the trial court erroneously denied his motion to suppress evidence. Defendant argues the police did not have a reasonable suspicion of criminal activity to detain him and the detention was an unlawful de facto arrest. He also argues that, if this court finds he gave consent to the patdown search, his consent was coerced and therefore invalid. Defendant further argues the trial court prejudicially erred in rejecting his request to give a mistake of fact instruction (CALCRIM No. 3406). We conclude the trial court did not commit prejudicial error and affirm the judgment.

# II

## FACTS AND PROCEDURAL BACKGROUND

On March 5, 2014, around 3:30 p.m., Sergeant Hearns received a radio broadcast that a shooting incident had just occurred. The suspects were described as three Black

---

[1] Penal Code section 29800, subdivision (a); unless otherwise noted, all statutory references are to the Penal Code.

males fleeing in a blue or black Chevy Impala. As Hearns was responding to the scene, he saw a vehicle approaching him that matched the description of the suspects' car. The vehicle, driven by defendant, was a black Chevy Impala with a spoiler. The vehicle was traveling from the area of the shooting. Hearns noticed defendant look at Hearns and then quickly look away.

Hearns made a U-turn and followed defendant because defendant's car matched the description of the suspects' car and Hearns thought defendant's quick look at him was suspicious. Hearns called for backup. Defendant abruptly changed lanes and darted into a gas station. Hearns activated his lights and siren. Defendant did not yield. He drove to the furthest gas pump and then stopped, with the gas pump obscuring Hearns's view of the driver's side of defendant's car.

Hearns exited his patrol car, ran to the back of the pump, confronted defendant at gunpoint, and ordered him to put his hands outside the car window. Defendant complied. Hearns ordered defendant to drop the item in his hand. Defendant did so. Within seconds, Officers Seanz and Klopping arrived. They both drew their weapons and took over investigating defendant. As ordered by Saenz, defendant got out of his car with his hands behind his back. Defendant was wearing a black T-shirt and black jeans. Saenz told defendant to stay calm and, if he did not have possession of anything, he could leave. Defendant responded that he had a gun in his back pocket.

Saenz handcuffed defendant and retrieved a loaded .380 pistol from defendant's right rear pocket. The handgun handle and trigger were covered by a sock. Saenz testified that covering the gun with a sock is commonly done to obscure the silhouette of

3

the gun so that it is not readily identifiable as a weapon. Officer Ahmed testified that defendant was convicted in 2003 of violating Health and Safety Code section 11352, subdivision (a) (felony transportation or sale of a controlled substance).

Defendant testified he was carrying a firearm when detained but was unaware of his felon status. A judge told him his 2003 conviction for sale of cocaine had been "wiped clean" and expunged because defendant had successfully completed a drug treatment program. Defendant acknowledged he knew felons cannot possess firearms. Defendant also knew that even a person with no criminal record could not carry a concealed gun in a back pocket. He never applied for a concealed weapon permit. Defendant did not know before the instant trial that his 2003 conviction for cocaine sales could not be expunged from his record and dismissed.

Defendant also admitted that in 2007, he pled guilty and was convicted of felony possession of a firearm for the benefit of a criminal street gang. Defendant, however, believed his 2007 conviction had been reduced to a misdemeanor because he completed probation for the conviction. Defendant was unaware that his 2007 conviction could not be terminated or dismissed. Defendant testified that at the time of the charged offense, as well as at the time of the instant trial, defendant believed he was not a convicted felon because his felonies had been expunged.

Defendant explained that he was in possession of a gun for protection because he bought and sold used cars for auctions and therefore carried large amounts of cash. He had previously been robbed at gunpoint, tied up, and shoved into a closet in his children's presence. Defendant was also robbed on another occasion. On the day of the charged

4

crime, defendant was in possession of a gun registered to his girlfriend because he had been at a car auction earlier that day.

## III

## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant contends the trial court erred in denying his motion to suppress evidence. Defendant argues the evidence supporting his conviction for being a felon in possession of a handgun resulted from an illegal detention, which was a de facto arrest.

*A. Search and Seizure Law*

The federal and California constitutions prohibit unreasonable seizures. (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13.) "'A seizure occurs whenever a police officer "by means of physical force or show of authority" restrains the liberty of a person to walk away.'" (*People v. Celis* (2004) 33 Cal.4th 667, 673 (*Celis*).) A seizure can be an arrest or a detention. (*In re Antonio B.* (2008) 166 Cal.App.4th 435, 439-440 (*Antonio B.*) An arrest requires an arrest warrant or probable cause. (*Id.* at p. 440.)

"Probable cause exists when the facts known to the arresting officer would persuade someone of 'reasonable caution' that the person to be arrested has committed a crime." (*Celis, supra,* 33 Cal.4th at p. 673.) Probable cause is not necessary for a detention. (*Antonio B., supra,* 166 Cal.App.4th at p. 440.) "[A]n officer who lacks probable cause to arrest can conduct a brief investigative detention when there is '"some objective manifestation" that criminal activity is afoot and that the person to be stopped is engaged in that activity.'" (*Celis,* at p. 674.)

5

The scope of a detention must be closely tailored to its underlying justification. (*People v. Soun* (1995) 34 Cal.App.4th 1499, 1516; *Florida v. Royer* (1983) 460 U.S. 491, 500.)  The permissible scope of an intrusion on the personal security of a suspect during a detention may vary with the particular facts and circumstances of each case. (*Ibid.*)  "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.  Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.  [Citations.]" (*Ibid.*; see *Antonio B., supra,* 166 Cal.App.4th at p. 440.)  The People have the burden of demonstrating that the detention "'was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.'"  (*Soun,* at p. 1516, quoting *Florida,* at p. 500.)

An investigative detention may "become so overly intrusive that it can no longer be characterized as a minimal intrusion designed to confirm quickly or dispel the suspicions which justified the initial stop.  [Citation.]  When the detention exceeds the boundaries of a permissible investigative stop, the detention becomes a de facto arrest requiring probable cause.  Citation.]  However, there is no hard and fast line to distinguish permissible investigative detentions from impermissible de facto arrests. Instead, the issue is decided on the facts of each case, with focus on whether the police diligently pursued a means of investigation reasonably designed to dispel or confirm their suspicions quickly, using the least intrusive means reasonably available under the circumstances." (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 384; *Antonio B., supra,* 166 Cal.App.4th at p. 440.)

6

## B. *Validity of Defendant's Detention*

Officers Hearns and Saenz testified they detained defendant because they believed he might be the perpetrator of a recent, nearby shooting. Defendant contends the police did not have cause to conduct an investigative detention of defendant because he and his car did not match the broadcast description of the suspect and the suspect's vehicle. Defendant argues Hearns and Saenz therefore did not have the requisite reasonable suspicion of criminal activity to detain him. We disagree.

The record supports the trial court's finding that when the officers stopped and detained defendant, the totality of the circumstances supported a reasonable suspicion defendant was the shooter suspect. Defendant's appearance, clothing, and car were the same or similar to the broadcast descriptions of the suspect, his car, and his clothing. Defendant argues the car was not the same as the broadcast description of the car because defendant's car had a spoiler and there was no mention of a spoiler during the broadcast description. Also the broadcast stated there were three occupants in the car leaving the shooting scene, whereas defendant was the sole occupant when he was pulled over. But these factual discrepancies and omissions in the broadcast descriptions did not preclude the officers from reasonably suspecting defendant was the perpetrator, where there was other evidence supporting a reasonable suspicion. The reporting witness might not have noticed the spoiler on the suspect's car or simply did not mention it. There was no statement the suspect's car did not have a spoiler. Also, the fact that defendant was the sole occupant when pulled over was not dispositive because two of the occupants could have gotten out of the car and fled before Hearns encountered the vehicle.

7

Circumstances supporting a reasonable suspicion included Hearns initially observing defendant close in time and place to the shooting incident. Defendant was seen traveling away from the area of the alleged shooting. Hearns stopped defendant about seven minutes after the shooting. Hearns testified he was about 10 minutes away from the shooting scene when it was reported, and first saw defendant when Hearns was about three minutes from the shooting scene. Hearns described defendant's conduct as evasive and suspicious. Hearns observed that when defendant spotted Hearns in a marked patrol car, he abruptly broke eye contact with Hearns, made a sudden lane change, and attempted to evade Hearns by darting into a gas station. Defendant failed to yield immediately to Hearns's flashing lights and siren, and continued driving through the gas station for about 50 feet before eventually stopping next to the furthest gas pump.

Hearns and Saenz both testified they thought defendant's conduct was suspicious and evasive, and believed defendant was the shooting suspect. Because Hearns and Saenz believed defendant was armed and dangerous, they drew their weapons when approaching him. While any single factor, such as defendant's abrupt break in eye contact or sudden lane change, alone, might not have been sufficient to detain defendant, the totality of circumstances was sufficient to do so based on a reasonable suspicion defendant was the perpetrator of a recent, nearby shooting.

The scope of defendant's detention was permissible as well. "[T]he police diligently pursued a means of investigation reasonably designed to dispel or confirm their suspicions quickly, using the least intrusive means reasonably available under the circumstances." (*In re Carlos M., supra,* 220 Cal.App.3d at p. 384; *Antonio B., supra,*

8

166 Cal.App.4th at p. 440.) Detaining defendant at gunpoint was reasonable because he was suspected of fleeing after having just committed a shooting. Defendant was therefore believed to be armed and dangerous. Shortly after Hearns stopped and detained defendant, Saenz and Klopping took over the investigatory detention. They used reasonable precautionary measures as well, which included removing defendant from his car at gunpoint, handcuffing defendant to prevent him from using a gun or other weapon, and conducting a patdown search after defendant said he had a gun. The detention was brief and minimally intrusive. It was reasonably designed to determine whether defendant was the shooting suspect and ensure the officers' safety during defendant's detention.

Defendant contends his detention constituted an unlawful de facto arrest unsupported by probable cause. On review of the trial court's ruling that the detention was a lawful detention, not a de facto arrest, we defer to the trial court's factual findings if supported by substantial evidence. As to whether the detention met the constitutional standard of reasonableness, we exercise our independent judgment based on those facts. (*People v. Leyba* (1981) 29 Cal.3d 591, 596-597; *Antonio B., supra,* 166 Cal.App.4th at p. 441.)

Defendant argues the detention was not minimally intrusive because it was conducted at gunpoint by multiple officers. During the detention, he was ordered to drop what was in his hands, was ordered to get out of his car, and was handcuffed. Defendant argues that such measures, entailing the use of considerable force, were unlawful because Hearns did not observe defendant commit any crime or traffic violation. Defendant

9

claims he did not have an observable weapon bulge which would have justified a patdown search. But defendant overlooks the fact that he was detained because he was suspected of having just committed a nearby shooting and fleeing the scene. The officers had a reasonable suspicion that defendant was the shooting suspect and therefore lawfully detained, searched, and handcuffed him for purposes of investigating whether he was the perpetrator.

As noted by the California Supreme Court in *Celis*, "handcuffing a suspect for a short period does not *necessarily* transform a detention into an arrest. [Citation.] This does not mean, however, that handcuffing a suspect will *never* transform a detention into an arrest. The issue is whether the use of handcuffs during a detention was reasonably necessary under all of the circumstances of the detention." (*Antonio B., supra,* 166 Cal.App.4th at p. 441, citing *Celis, supra,* 33 Cal.4th at p. 675.).)

The court in *Antonio B., supra,* 166 Cal.App.4th at pages 441-442, notes that in those cases in which a detention of a handcuffed suspect did not convert a detention to an arrest, the detentions were based upon (1) reports of violent felonies by persons matching the descriptions of the detained suspects and/or their vehicles, (2) reports or discovery the suspect was armed, or (3) reports that the suspect was seen leaving the scene of an attempted burglary. In the instant case, there were reports of a violent felony shooting by a suspect fleeing in a car matching defendant's appearance and car, and defendant was traveling away from the crime scene. Furthermore, defendant admitted he had a gun in his back pocket.

10

Based on the facts known to the officers, they acted reasonably in detaining defendant at gunpoint, handcuffing him, and conducting a patdown search during the detention, to effectuate the purpose of the stop; that of quickly dispelling or confirming the officers' suspicion that defendant was the shooting suspect. (*Celis, supra,* 33 Cal.4th at pp. 675-676; *Antonio B., supra,* 166 Cal.App.4th at p. 441.) Defendant's detention therefore was not a de facto arrest because the officers had a reasonable basis to believe defendant presented a physical threat to the officers and might flee. (*Antonio B.,* at p. 442; *People v. Pilster* (2006) 138 Cal.App.4th 1395, 1405-1406.)

Defendant contends that if this court finds he consented to the patdown search, such consent was coerced because he was held at gunpoint. Defendant argues the officers' assertion of authority during the detention elicited defendant's admission he possessed a gun, leading to seizure of the gun that formed the basis of his conviction. Defendant asserts that when he was told he could only leave if he did not have anything on him, this indicated he would be searched and therefore defendant involuntarily admitted to possession of the gun. But the People agree defendant did not consent to a search.

Nevertheless, consent to a patdown search was not required here because the search was performed during a lawful detention, during which there was reason to believe defendant was armed and dangerous. Defendant was detained because law enforcement believed he had just committed a nearby shooting. "When an officer reasonably suspects that an individual whose suspicious behavior he or she is investigating is armed and dangerous to the officer or others, he or she may perform a patsearch for weapons." (*In*

11

*re H.M.* (2008) 167 Cal.App.4th 136, 143, citing *Terry v. Ohio* (1968) 392 U.S. 1, 24, 30.) The trial court therefore did not err in denying defendant's motion to exclude evidence obtained during defendant's detention. The exclusionary rule does not apply here. Defendant's detention was a lawful, brief and minimally intrusive investigatory detention. In turn, the patdown search, which led to the discovery defendant unlawfully possessed a handgun, was constitutionally permissible.

IV

INSTRUCTIONAL ERROR

Defendant contends the trial court erred in rejecting his request the court give a mistake of fact instruction, CALCRIM No. 3406.[2] Defendant argues that the trial court's rejection of the instruction deprived him of his due process right to present a mistake of fact defense as to his felon status. The People argue defendant was not entitled to the

---

[2] CALCRIM No. 3406 states:

"The defendant is not guilty of *<insert crime[s]>* if (he/she) did not have the intent or mental state required to commit the crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact.

"If the defendant's conduct would have been lawful under the facts as (he/she)[reasonably] believed them to be, (he/she) did not commit *<insert crime[s]>*.

"If you find that the defendant believed that *<insert alleged mistaken facts>* [and if you find that belief was reasonable], (he/she) did not have the specific intent or mental state required for *<insert crime[s]>*.

"If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for *<insert crime[s]>*, you must find (him/her) not guilty of (that crime/those crimes)."

12

mistake of fact instruction because defendant's mistake as to his felon status was a mistake of law, not a mistake of fact.

At trial, defendant conceded he knew felons cannot possess firearms and admitted he was carrying a firearm when detained. Defendant testified he was, however, unaware of his felon status because a judge had told him his 2003 conviction was expunged upon successfully completing a drug treatment program. Defendant also believed his 2007 conviction had been reduced to a misdemeanor because he completed probation for the conviction. Defendant was unaware that his 2003 and 2007 convictions could not be dismissed.

After both parties submitted on the evidence presented at trial, the parties agreed during a discussion of the jury instructions that a mistake of law instruction should be given. Defendant also requested a mistake of fact instruction, CALCRIM No. 3406, on the ground defendant thought his felony convictions had been expunged. Relying on *People v. Snyder* (1982) 32 Cal.3d 590 (*Snyder*), the trial court rejected the mistake of law instruction. The trial court explained that defendant was presumed to know that it was unlawful for a convicted felon to possess a concealed firearm. In addition, defendant was deemed to have known he was a convicted felon forbidden to possess a firearm, since he had been convicted of two felonies. The trial concluded *People Bray* (1975) 52 Cal.App.3d 494 (*Bray*), cited by defendant, was distinguishable and did not apply.

The trial court instructed the jury that, to prove the defendant guilty of the crime of unlawfully possessing a firearm in violation of section 29800, subdivision (a), the People must prove:

13

"1.  The defendant possessed a firearm;

"2.  The defendant knew that he possessed a firearm; [¶] and

"3.  The defendant had previously been convicted of a felony."

The court also instructed on mistake of law (CALCRIM No. 3407) as follows: "It is not a defense to the crime of felon in possession of a firearm that the defendant did not know he was breaking the law or that he believed his act was lawful."  The court did not instruct on mistake of fact.

In determining whether the trial court erred in not giving the mistake of fact jury instruction, this court must consider the instructions as a whole.  (*People v. Billings* (1981) 124 Cal.App.3d 422, 427-428.)  "The trial court has a duty to instruct the jury on all principles of law relevant to the issues raised by the evidence [citation] and a correlative duty to refrain from instructing on irrelevant and confusing principles of law [citation]."  (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1250)  "A trial court must give a requested instruction only if it is supported by substantial evidence, that is, evidence sufficient to deserve jury consideration.  [Citations.]  . . . '[U]nsupported theories should not be presented to the jury.'  [Citation.]"  (*People v. Marshall* (1997) 15 Cal.4th 1, 39-40.)

Here, the trial court was not required to instruct on mistake of fact because the instruction did not apply.  Defendant's unawareness that he was a felon and therefore violating the law by possessing a firearm was not a mistake of fact.  It was a mistake of law, which as the jury was instructed, "is not a defense to the crime of felon in possession of a firearm."  (CALCRIM No. 3407.)  In *Snyder, supra,* 32 Cal.3d 590, the court

14

rejected the defendant's contention the trial court erred in excluding evidence of her mistaken belief her prior conviction was a misdemeanor, not a felony. The *Snyder* court held that the defendant's mistake regarding her legal status as a convicted felon did not constitute a defense to the defendant's firearm possession charge. (*Snyder,* at pp. 591-592.)

In *Snyder* the defendant pled guilty to the felony, sale of marijuana (Health & Saf. Code, § 11531), and thereafter was charged with and convicted of being a felon in possession of a firearm. (§ 12021, subd. (a), recodified as § 29800, subd. (a).) The defendant offered to present evidence that, at the time she entered her guilty plea, defendant's attorney erroneously advised her that she was pleading guilty to a misdemeanor. The trial court refused to admit any evidence of the defendant's mistaken belief that her prior conviction was a misdemeanor, not a felony. The court also rejected proposed instructions requiring proof the defendant had knowledge her conviction was a felony.

The court in *Snyder* explained that the firearm possession crime is a general intent crime. No specific intent is required. (*Snyder, supra,* 32 Cal.3d at p. 592.) The *Snyder* court noted that federal courts have construed a similar federal statute forbidding possession of a firearm by a convicted felon: "The federal statute has been uniformly interpreted as requiring only that the defendant was in fact a convicted felon, and not that he actually knew that he was a felon. . . . 'Because the crimes here charged do not require a specific intent [citation], the fact that appellant may have been advised by a

15

public defender that he was not a convicted felon, has no relevance.'" (*Id.* at p. 594, quoting *U. S. v. Locke* (9th Cir. 1976) 542 F.2d 800, 801.)

The *Snyder* court concluded that mistake of fact did not constitute a defense to the crime of being a felon in possession of a firearm because, "regardless of what she reasonably believed, or what her attorney may have told her, defendant was deemed to know *under the law* that she was a convicted felon forbidden to possess concealable firearms. Her asserted mistake regarding her correct legal status was a mistake of law, not fact." (*Snyder, supra,* 32 Cal.3d at p. 593.) As in *Snyder*, any misconception by defendant that he was not a felon is not a mistake of fact but a mistake of law, and therefore mistake of fact is not a valid defense requiring instruction.

The *Snyder* court further concluded the defendant's reliance on *Bray, supra,* 52 Cal.App.3d 494, was misplaced. In *Bray*, the defendant pleaded guilty in Kansas to being an accessory before the fact and was placed on summary probation, which he completed. Thereafter he moved to California and registered to vote. On the application registering to vote, the defendant stated he had been convicted of a felony and filled out an explanatory form indicating he was uncertain whether he had been convicted of a felony. The defendant was permitted to vote. The defendant stated on an employment application for a security guard job that he had not been convicted of a felony but had been arrested. The defendant described the circumstances of his arrest and probation. The Bureau of Collection and Investigative Services registered him as a guard. On several other job applications he indicated his uncertainty as to his status while fully setting forth the circumstances of his arrest and probation. During execution of a search

16

warrant of defendant's house and car, the defendant voluntarily led the investigators to a closet where he kept two guns. As a consequence, the defendant was charged and convicted of being a felon in possession of a firearm. (*Id.* at pp. 496-497.)

The court in *Bray* addressed the issue of whether a conviction for being a felon in possession of a firearm required proof of the defendant's knowledge of his or her felony status, and whether such a prosecution may be defended by showing the defendant lacked knowledge he was a felon. (*Bray, supra,* 52 Cal.App.3d at p. 497.) The *Bray* court acknowledged the trend in case law was to impose strict liability. (*Ibid.*) The *Bray* court noted, however, that "knowledge that one is a felon becomes relevant where there is doubt the defendant knew he had committed a felony." (*Id.* at p. 498.)

In *Bray*, the California district attorney had great difficulty in determining whether the defendant's Kansas conviction for accessory after the fact was considered a felony or a misdemeanor in California. The *Bray* court concluded that a lay person such as the defendant would be even less likely to know whether the offense was a felony. Without such knowledge, the defendant was ignorant of the facts necessary for him to come within the proscription of section 12021 (now codified as 29800, subd. (a)). The court in *Bray* concluded that under these unusual circumstances the trial court committed prejudicial error by not instructing on mistake of fact. (*Bray, supra,* 52 Cal.App.3d, at p. 499.) The *Bray* court, however, cautioned that its decision "should not be interpreted to mean instructions on mistake or ignorance of fact and knowledge of the facts are required every time a defendant claims he did not know he was a felon . . . . It is only in very

17

unusual circumstances such as these that the giving of these instructions is necessary." (*Ibid.*)

The court in *Snyder* explained that *Bray* was distinguishable because, "[i]n the present case, unlike *Bray,* defendant made no attempt to inform government officials of the circumstances of her conviction or to seek their advice regarding her correct legal status." (*Snyder, supra,* 32 Cal.3d at p. 595.) The *Snyder* court acknowledged, however, that "[s]ome authorities have suggested that reliance upon the erroneous advice of governmental authorities might constitute an exception to the general rule that a mistake of law is no defense." Nevertheless, the court in *Snyder* concluded such an exception did not apply and that the trial court properly excluded evidence of the defendant's asserted mistake regarding her felon status. (*Ibid*.)

Here, also, an exception does not apply to the general rule that a mistake of law is no defense. This case does not involve confusion over whether an out-of-state conviction is a felony or misdemeanor in California. In addition, although defendant may have incorrectly believed his convictions were not felonies, there was no evidence defendant inquired whether they were expunged and whether he could legally possess a firearm.

Even assuming, without finding, that a judge led defendant to believe his 2003 conviction was expunged, the mistake of fact instruction was not required because defendant also had a 2007 felony conviction. As to that conviction, mistake of fact provides no defense to the charge of being a felon in possession of a firearm. Defendant has not shown he relied upon erroneous advice by governmental authorities regarding his felony status or ability to possess firearms, or any unusual circumstances that would

18

support applying the exception to the general rule that a mistake of law is no defense.

The trial court therefore did not err in rejecting instruction on mistake of fact.

V

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

19