Filed 4/19/13  P. v. Hall CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037560 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC962143) |
| v. | |
| DOREMAN NICHOLS HALL, | |
| Defendant and Appellant. | |

Defendant Doreman Nichols Hall appeals from a judgment of conviction entered after a no contest plea to two counts of failing to properly register as a sex offender (Pen. Code, § 290.011, subd. (b)),[1] one count of being a felon in possession of a firearm (former § 12021, subd. (a)(1)) and one count of possessing a short-barreled shotgun (former § 12020, subd. (a)(1)).[2]  The trial court sentenced defendant to the lower term of 16 months in prison, with each count running concurrently.  On appeal, defendant contends the trial court erred in denying a section 1538.5 motion to suppress evidence obtained in the warrantless search of his bedroom.  Finding no error, we will affirm the judgment.

---

[1] Unless otherwise stated, all further statutory references are to the Penal Code.

[2] Effective January 1, 2012, sections 12020 and 12021 have been renumbered sections 33210 and 29800, respectively.  (Stats. 2010, ch. 711, § 6.)

## I.     Procedural and Factual Background[3]

Defendant is a convicted sex offender with a lifetime registration requirement. He was charged in counts one and two of a seven-count information with failing to change his transient registration status within five days of establishing a residence (§ 290.011, subd. (b)); in counts three and four with failing to inform law enforcement of his new address within five days (§ 290, subd. (b)); and in count five with failing to update his transient registration within five days of his birthday (§ 290.011, subd. (c)). Count six charged defendant with being a felon in possession of a firearm (former § 12021, subd. (a)(1)); and count seven with possession of a short-barreled shotgun (former § 12020, subd. (a)(1)).

The superior court heard defendant's motion to suppress evidence on February 26, 2010. The prosecution presented testimony from Sergeant Linden, Officer Coker, and Officer Johnson of the San Jose Police Department; defendant did not call witnesses. Officer Johnson testified that at approximately 6:30 p.m. on November 21, 2009, he was dispatched to an apartment complex at 808 Opal Drive in San Jose. As Officer Johnson arrived on scene, witnesses told him of "a disturbance involving weapons going on," and directed him to a vehicle parked in space No. 4. The witnesses described "two black males, one older, one younger," involved in the disturbance; and, that "the older one" was smashing the windows of the car with a bat or similar instrument. The witnesses indicated that the vehicle may have belonged to the male smashing its windows. Other witnesses told the officer that the person who had smashed the car's windows went into the apartment associated with the space it was parked in.

---

[3] The factual summary is based on the testimony at the hearing on defendant's motion to suppress evidence. "Since the trial court resolved this matter in favor of the prosecution, for purposes of this proceeding we view the record in the light most favorable to the People's position." (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 780.)

After speaking to the witnesses, Officer Johnson approached the vehicle parked in space No. 4, which appeared to correspond with apartment No. 4, and saw that the car windows were smashed. He ran the vehicle's license plate number through police dispatch who confirmed that Doreman Hall was the vehicle's registered owner. He also asked the dispatcher to search the Criminal Justice Information Center (CJIC) for any information regarding Doreman Hall. Officer Johnson then heard what "sounded like people in a verbal argument, things breaking, crashing, . . . possibly somebody in a physical fight" coming from the opposite side of the apartment complex. He moved closer to the noise and determined it was coming from the "upper unit" of the apartment complex, the same apartment witnesses had described the defendant going into. Sergeant Linden and Officer Jolliff joined Officer Johnson at the base of the stairs to apartment No. 4, which was later identified as defendant's apartment.

Dispatch responded with two birthdates associated with the name Doreman Hall. The first birth date was August 26, 1962, and the second was October 27, 1985. The officers learned that the younger Hall (later identified as defendant's son and referred to here as "Hall Jr.") had an active felony arrest warrant and was on parole from the California Youth Authority. Dispatch also confirmed that the older Hall was required to register as a sex offender pursuant to section 290.

The disturbance occurring inside defendant's apartment could still be heard. Sergeant Linden testified that he heard "yelling" and "crashing and bashing of things being broken or thrown around or somebody being beat or thrown around," and that he "felt that there was a high potential that somebody's life or safety was in danger." Sergeant Linden and Officers Johnson and Jolliff proceeded up the stairs, knocked and announced their presence. A Black male subject (later identified as defendant) appeared in a window next to the door and stated: "Come back with a search warrant. I'm not opening the door." Since only defendant's upper torso was visible and his hands could

not be seen, Sergeant Linden did not know whether defendant was armed. Officer Johnson again commanded defendant to open the door, and when defendant did not comply, Officer Johnson drew his service weapon and pointed it at defendant through the window. With his weapon drawn, Officer Johnson again commanded defendant to open the door, defendant refused, and Sergeant Linden ultimately kicked the front door open.

Officer Johnson entered the apartment, pointed his weapon at defendant, and ordered him to the floor where Officer Johnson handcuffed him. Sergeant Linden approached Hall Jr., who was found sitting on the couch with his hands in the air. Officers Coker and Frost then arrived on scene.

The residence was a one-bedroom apartment. To ensure "that there was nobody needing medical attention or anybody that posed a threat," the officers conducted a "protective sweep" of the areas where another person could be. No persons other than defendant and his son were found in the apartment. However, while conducting the protective sweep, Officer Coker observed "the shoulder pad and stock of a long gun" and a separate gun case that appeared to be full under the bed in the apartment's sole bedroom.

Sergeant Linden returned to Hall Jr. and asked him to identify himself. Hall Jr. complied and stated that he had been staying in the apartment. The officers observed a makeshift bed in the living room, and Hall Jr. confirmed that he had been sleeping there. Hall Jr. also told the officers that his luggage was in the bedroom closet. Based on Hall Jr.'s statements and Sergeant Linden's own observations of men's clothing, shoes, and toiletries, Sergeant Linden determined that the apartment belonged to defendant and that he occupied the apartment's sole bedroom.

Sergeant Linden received defendant's felony history through dispatch, including two prior convictions for registrable sex offenses (§ 288, subd. (c)), and that information was at some point conveyed to Officer Coker. Sergeant Linden then directed Officer

Coker to retrieve the firearms found under defendant's bed because "convicted felons can't hold firearms." While doing so, Officer Coker observed another shotgun under the dresser, which was "about 2 feet from the foot of the bed." Officer Coker retrieved that shotgun as well, and found that it was loaded and less than 18 inches in length. Officer Coker also collected mail addressed to defendant that he had observed on top of the dresser during the protective sweep.

Having confirmed Hall Jr.'s identity and parolee status, and in light of his staying and sleeping at the apartment and storing luggage in the bedroom closet, Sergeant Linden determined that Hall Jr. had access to the apartment's bedroom and ordered a parole search. During that search, Officer Coker found five rounds of .38-caliber ammunition in one of the dresser drawers located in the bedroom.

## II.    *The Trial Court's Findings and Disposition*

The trial court delivered its ruling in two parts. First, the court determined that "there [were] exigent circumstances" allowing the officers to enter the apartment without first obtaining a warrant. The court explained that "objectively speaking, what we have here is an act of very significant violence, whether it was Mr. Hall's car or not. Somebody is smashing a car with a bat or a pipe, it's a very significantly violent act. That person goes to a nearby apartment. Officers hear multiple voices and sounds of the movement and violence and yelling. I think it's a perfectly reasonable possibility that they anticipated someone was or could be getting hurt, given that just minutes before witnesses had seen a very violent act with a dangerous or deadly weapon. So, I do believe that there [were] exigent circumstances. I don't think it was appropriate for the officers to have to wait at that time to get a warrant given that it could take a significant period of time and someone could be very well committing a crime and/or being injured in that apartment. So, I find that their entry was appropriate under exigent circumstances."

The court further found that the "protective sweep was certainly appropriate" and that "the plain view as to the guns was appropriate." The court explained, "I think checking under the bed is an absolute requirement for a protective sweep. [The officer] was able to retrieve the guns by reaching under the bed, therefore indicating that somebody certainly could have been underneath that bed in a space that was appropriate to be checked." The court concluded that "when [the officer] was retrieving those guns, [he] was in a position that he was really allowed to be in retrieving those guns, and, therefore, viewing the other gun in plain view at that time." The court took the matter under submission in order to research the appropriate scope of the parole search.

On March 5, 2010, the court delivered the remainder of its ruling. The court found that the ammunition retrieved from the bedroom dresser drawer was properly seized pursuant to Hall Jr.'s parole search condition. The court reasoned that Hall Jr. was "staying" at defendant's apartment, and since the officers confirmed that Hall Jr.'s luggage was in his father's bedroom closet, where he said it would be, it was reasonable for the officers to infer that Hall Jr. had access to his father's bedroom. The court also concluded that the collection of defendant's mail as indicia of his residency was proper because it was found in the bedroom in plain view.

After the suppression motion was denied, defendant pleaded no contest to failing to properly register as a sex offender (§ 290.011, subd. (b)) (counts one & two), possession of a firearm by a felon (former § 12021, subd. (a)(1)) (count six), and possession of a short-barreled shotgun (former § 12020, subd. (a)(1)) (count seven). By agreement, the trial court sentenced defendant to 16 months in state prison concurrent for each count, and the remaining counts were dismissed.

Defendant filed a timely notice of appeal of the denial of the motion to suppress. The denial of a suppression motion may be challenged by an appeal from the judgment

entered after a guilty or no contest plea. (§ 1538.5, subd. (m); *People v. Lilienthal* (1978) 22 Cal.3d 891, 896.)

### III.    *Discussion*

Defendant contends that the trial court erred in denying his motion to suppress "because the protective sweep of [his] residence was not justified and the search of [his] exclusively controlled bedroom was not reasonably justified by his son's parolee status." Defendant also argues that "[t]he inevitable discovery doctrine does not apply because the evidence would not have been discovered under the search incident to arrest doctrine." Lastly, defendant contends that should any of his arguments be deemed forfeited, defense counsel rendered ineffective assistance of counsel.

The Attorney General argues that the trial court's denial of defendant's motion to suppress was supported by the exigent circumstances doctrine and the protective sweep exception to the warrant requirement, and that any evidence initially observed in plain view was properly seized. The Attorney General further argues that the parole search of defendant's bedroom was proper since Hall Jr. shared access to the bedroom, as was evidenced by the storage of Hall Jr.'s luggage in the bedroom closet. Finally, the Attorney General asserts that pursuant to the inevitable discovery doctrine, the search of defendant's bedroom was "warranted as a search incident to arrest."

### A.  *Standard of Review*

"'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.'" (*People v. Weaver* (2001) 26 Cal.4th 876, 924, quoting *People v. Glaser* (1995) 11 Cal.4th 354, 362.) "And where, as is the case here, there is no controversy concerning the underlying facts, our task is simplified: The only issue is

whether that rule of law, as applied to the undisputed historical facts, was or was not violated. This is an issue for our independent review. (See *People v. Thompson* (2006) 38 Cal.4th 811, 818.)" (*People v. Werner* (2012) 207 Cal.App.4th 1195, 1203-1204 (*Werner*).)

### B. *Applicable Search and Seizure Principles*

The federal and state Constitutions prohibit unreasonable searches and seizures by the government, and a warrantless entry into a home is presumptively unreasonable. (U.S. Const., 4th & 14th Amends.; Cal. Const., art. I, § 13; *Payton v. New York* (1980) 445 U.S. 573, 587.) California law requires that the reasonableness of searches and seizures undertaken by the police be reviewed under federal constitutional standards. (*People v. Rogers* (2009) 46 Cal.4th 1136, 1156, fn. 8 (*Rogers*).)

In the case of a warrantless search of a home, the prosecution bears the burden of establishing that the search "was justified by some exception to the warrant requirement." (*People v. Camacho* (2000) 23 Cal.4th 824, 830.) As recently explained by the California Supreme Court, " '[T]he "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." ' [Citation.] Thus, 'searches and seizures inside a home without a warrant are presumptively unreasonable.' [Citation.] 'Nevertheless, because the ultimate touchstone of the Fourth Amendment is "reasonableness," the warrant requirement is subject to certain exceptions.' " (*People v. Troyer* (2011) 51 Cal.4th 599, 602.)

The exigent circumstances doctrine provides an exception to the warrant requirement. (*Rogers*, *supra*, 46 Cal.4th at p. 1156.) " '[E]ntry into a home based on exigent circumstances requires *probable cause* to believe that the entry is justified by one of these factors such as the imminent destruction of evidence or the need to prevent a suspect's escape.' " (*People v. Thompson* (2006) 38 Cal.4th 811, 818, quoting *People v. Celis* (2004) 33 Cal.4th 667, 676 (*Celis*).) Additionally, "[a]s relevant here, the exigent

circumstances doctrine constitutes an exception to the warrant requirement when an emergency situation requires swift action to prevent imminent danger to life." (*Rogers*, *supra*, at p. 1156.) "'"'[T]here is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers.'"' [Citation.] Generally, a court will find a warrantless entry justified if the facts available to the officer at the moment of the entry would cause a person of reasonable caution to believe that the action taken was appropriate." (*Id.* at p. 1157.)

"One recognized exigent circumstance that will support the warrantless entry of a home--the risk of danger to police or others on the scene--also provides the justification for a 'protective sweep' of a residence under the high court's decision in [*Maryland v.*] *Buie* [(1990)] 494 U.S. 325." (*Celis*, *supra*, 33 Cal.4th at pp. 676-677.) "The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." (*Maryland v. Buie*, *supra*, 494 U.S. at p. 337.)

"As the California Supreme Court has further explained, '[a] protective sweep of a house for officer safety as described in *Buie*, *does not* require probable cause to believe there is someone posing a danger to the officers in the area to be swept. [Citation.] . . . A protective sweep can be justified merely by a *reasonable suspicion* that the area to be swept harbors a dangerous person. [Citation.] Like the limited pat down for weapons authorized by *Terry v. Ohio* [(1968)] 392 U.S. 1, 21, 27, a protective sweep may not be based on "a mere 'inchoate and unparticularized suspicion or "hunch." ' " ' (*People v. Celis* (2004) 33 Cal.4th 667, 678 (*Celis*); see also *People v. Troyer*, *supra*, 51 Cal.4th at pp. 606-607.) The test under *Buie* therefore requires a reasonable suspicion *both* that another person is in the premises *and* that that person is dangerous. (3 LaFave, Search

and Seizure (4th ed. 2004) § 6.4(c), p. 377.) The existence of such a reasonable suspicion is evaluated on a case-by-case basis by looking at the ' "totality of the circumstances" ' to ascertain whether the police had or whether the officer has 'a "particularized and objective basis" ' for his or her suspicion. (*United States v. Arvizu* (2002) 534 U.S. 266, 273.)" (*Werner*, *supra*, 207 Cal.App.4th at pp. 1205-1206.)

It was the People's burden below to demonstrate the reasonableness of the search under a recognized exception to the general warrant requirement. (*Vale v. Louisiana* (1969) 399 U.S. 30, 34; *People v. James* (1977) 19 Cal.3d 99, 106.) Here, we agree with the trial court that the officers' initial intrusion into defendant's home was proper pursuant to the exigent circumstances doctrine. When we view the facts known to the officers at the time of their warrantless entry into defendant's home, we conclude that their entry was a necessary and appropriate response to an emergency situation which required swift action to prevent imminent danger to life. (*Rogers*, *supra*, 46 Cal.4th at p. 1156.)

When Officer Johnson arrived at defendant's apartment complex, he was flagged down by multiple witnesses and informed that a male subject was smashing the windows of a vehicle with a "bat or another weapon." The witnesses reported that two individuals involved in the disturbance went inside a nearby apartment. Officer Johnson independently verified that the vehicle's windows were smashed. As he stood by the vehicle, he could hear what "sounded like people in a verbal argument, things breaking, crashing, . . . possibly somebody in a physical fight." After Sergeant Linden and Officer Jolliff joined Officer Johnson at the base of the stairs to defendant's apartment, they continued to hear yelling and the sound of "things being broken or thrown around or somebody being beat or thrown around," coming from the defendant's apartment. Sergeant Linden "felt that there was a high potential that somebody's life or safety was in danger."

Defendant argues unpersuasively that any exigency ended once officers entered the apartment and found both defendant and his son in the living room. Defendant asserts that the witnesses only reported seeing two males outside smashing the windows of a vehicle, such that once those two males were found, the urgency no longer existed. However, we view the facts as they were presented to the officers in order to determine if a warrantless entry was justified, and we must therefore ask whether those facts would cause a person of reasonable caution to believe that the action taken was appropriate. (*Rogers*, *supra*, 46 Cal.4th at p. 1157.) In this case, the answer is yes.

Here, the exigent circumstances did not end upon the officers' entry into defendant's apartment, but rather when the officers completed a protective sweep of the premises. At the time of their entry, the officers did not know whether anyone else was inside the apartment, and the witnesses had not reported whether they believed anyone else was inside. Given that the officers heard "crashing and bashing of things being broken or thrown around," it was reasonable for the officers to search for persons "needing medical attention or anybody that posed a threat."

While defendant acknowledges that that the initial entry into the apartment was justified by exigent circumstances, he fails to recognize that those same circumstances created the need for a protective sweep. Since, as we explained above, the higher standard of probable cause necessary to justify an entry and search pursuant to the exigent circumstances doctrine was satisfied here, it follows that the lower standard requiring reasonable suspicion to conduct a protective sweep was also met.

While conducting the protective sweep of defendant's bedroom, Officer Coker observed a firearm and a gun case under defendant's bed. After the officers confirmed defendant's status as a convicted felon, Officer Coker retrieved the guns located under the bed. While at the floor level to retrieve those guns, Officer Coker observed another firearm under a nearby dresser. While conducting the protective sweep, Officer Coker

also observed "a variety of mail and letters" on top of the dresser in the bedroom. Knowing at that point that defendant was required to register as a sex offender, Officer Coker collected defendant's mail as evidence of indicia of his residency. Since the mail was observed in plain view in a location where officers were legally allowed to be, the seizure was proper.

"[P]olice may seize any evidence that is in plain view during the course of their legitimate emergency activities." (*Mincey v. Arizona* (1978) 437 U.S. 385, 393.) Indeed, " 'in the course of conducting a reasonable search [the police do] not have to blind themselves to what [is] in plain sight simply because it [is] disconnected with the purpose for which they entered.' " (*People v. Duncan* (1986) 42 Cal.3d 91, 99, quoting *People v. Roberts* (1956) 47 Cal.2d 374, 379.)

In our view, the entry and search of the apartment were justified by exigent circumstances. We therefore do not address defendant's arguments concerning the applicability of the inevitable discovery doctrine. (See *Rogers*, *supra*, 46 Cal.4th at p. 1161, fn. 12, [having found exigent circumstances, no need to consider alternative justification theory of inevitable discovery]; *People v. Hochstraser* (2009) 178 Cal.App.4th 883, 894.)

We need not reach whether the parole search was appropriate in this case because none of the evidence seized pursuant to the parole search was used as evidence against defendant. The only evidence seized during the parole search was five rounds of .38-caliber ammunition in one of the dresser drawers located in defendant's bedroom. However, no charges were brought against defendant based on that evidence.

*IV.     Disposition*

The judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Rushing, P.J.

_____

Márquez, J.