[No. S107885. July 26, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
RENATO CELIS, Defendant and Appellant.

COUNSEL

Nicholas DePento for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steven T. Oetting, Rhonda L. Cartwright-Ladendorf and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KENNARD, J.**—Suspecting defendant of drug trafficking, police officers stopped him at gunpoint behind his house, handcuffed him, and made him sit on the ground. The officers then entered defendant's house to determine whether there was anyone inside who might endanger their safety. They did not find anyone, but they did see a large box with uniformly sized, wrapped packages that, after a search, proved to contain cocaine.

We address two issues. Was the officers' initial seizure of defendant an arrest requiring probable cause, or was it merely a detention requiring only a reasonable suspicion of criminal activity? And was the officers' entry into and inspection of defendant's house permissible as a "protective sweep" under the United States Supreme Court's decision in *Maryland v. Buie* (1990) 494 U.S. 325 [108 L.Ed.2d 276, 110 S.Ct. 1093] (*Buie*)? We conclude that defendant was initially detained, not arrested, and that the facts known to the officers fell short of those necessary to justify a *Buie* protective sweep.

## I

Defendant was charged in San Diego County with conspiracy (Pen. Code, § 182, subd. (a)(1)) and possession of more than 20 kilograms of cocaine for sale (Health & Saf. Code, §§ 11351, 11370.4, subd. (a)(4)). He moved to suppress the evidence. (Pen. Code, § 1538.5.)

At the hearing on the suppression motion, the prosecution presented testimony by Detective John Strain of the Tustin Police Department in Orange County. Strain was a member of a task force investigating statewide drug trafficking by a group suspected of concealing and transporting drugs inside large truck tires. In December 1999, task force members saw a small red pickup truck deliver one such tire to a residence in Los Angeles County. Suspecting that the tire would be used to transport drugs, police executed a search warrant at that site and seized $400,000 in cash and the tire, which had been slit open. Later, California Highway Patrol officers stopped the red

pickup truck in San Diego County. Hidden in a false compartment in the truck was $50,000 in cash. In January 2000, task force members found another cut-open truck tire together with drug packaging materials in an abandoned house in Los Angeles County. In none of these incidents did police recover drugs or weapons.

Task force members later learned that the red pickup truck involved in the truck tire delivery in Los Angeles County was registered to someone with an address on Concepcion Street in the City of San Diego. During surveillance at that location, they saw a car parked outside; they traced its registration to a San Diego house on A Street, defendant's residence. They then put defendant's house under surveillance.

On April 26, 2000, Detective Strain saw defendant leave his home in a minivan and drive to a tire store in San Diego. There, defendant put an air pressurizing tank into his van and drove home. Later that same day, he drove to the Mexican border with the tank still in his minivan. He parked his car and walked across the border, where the undercover officers lost sight of him.

The next day, task force members followed defendant as he drove around San Diego with his wife. Defendant engaged in "evasive driving," such as making abrupt lane changes, which to Detective Strain indicated that defendant knew he was being followed. Later that day, defendant drove from his home to the same tire store he had visited the previous day. He left the store with a deflated tire. The tire was too big for defendant's minivan, but Detective Strain thought it would fit a one-ton pickup truck. That same day, defendant returned to the tire store, this time accompanied by a man, who was later identified as Luis Ordaz. They took an air pressurizing tank into the tire shop. After a while, they returned with the tank to defendant's house and took it inside.

Some 40 minutes later, defendant came through the back door of his house, rolling a large inflated truck tire toward the alley. It appeared to Detective Strain to be the same tire defendant had brought back from the tire shop. About the same time, Ordaz arrived in the alley driving a full-sized green pickup truck. Suspecting that the tire defendant was rolling toward the alley contained either money or narcotics, Detective Strain pulled out his gun and ordered defendant and Ordaz to stop. Defendant was handcuffed and made to sit down against the wall of the house. Because Detective Strain had noticed that defendant's wife and "possibly a male juvenile" lived with him, Strain together with other officers entered the house to determine if there was anyone inside who might endanger their safety. It took less than two minutes to walk through the 500-square-foot house. The officers did not find anyone inside, but did see a wooden box large enough to conceal a person. Inside the

box were several uniformly sized, wrapped packages. Some 20 minutes later, the officers obtained defendant's consent to search the packages, which proved to contain 16 kilograms of cocaine. They also searched the large truck tire, which contained 25 kilograms of cocaine.

After denial of his motion to suppress evidence, defendant pled guilty and received a 12-year prison sentence. The Court of Appeal rejected defendant's challenge to the trial court's denial of his suppression motion, and it affirmed the judgment of conviction. We granted defendant's petition for review.

## II

■ The federal Constitution's Fourth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits unreasonable seizures. Our state Constitution includes a similar prohibition. (Cal. Const., art. I, § 13.) "A seizure occurs whenever a police officer 'by means of physical force or show of authority' restrains the liberty of a person to walk away." (*People v. Souza* (1994) 9 Cal.4th 224, 229 [36 Cal.Rptr.2d 569, 885 P.2d 982], quoting *Terry v. Ohio* (1968) 392 U.S. 1, 19, fn. 16 [20 L.Ed.2d 889, 88 S.Ct. 1868].) Whether a seizure has taken place is to be determined by an objective test, which asks "not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." (*California v. Hodari D.* (1999) 499 U.S. 621, 628 [113 L.Ed.2d 690, 111 S.Ct. 1547].) Thus, when police engage in conduct that would "communicate[] to a reasonable person that he was not at liberty to ignore the police presence and go about his business," there has been a seizure. (*Kaupp v. Texas* (2003) 538 U.S. 626, 629 [155 L.Ed.2d 814, 123 S.Ct. 1843]; *Florida v. Bostick* (1991) 501 U.S. 429, 437 [115 L.Ed.2d 389, 111 S.Ct. 2382].)

When the seizure of a person amounts to an arrest, it must be supported by an arrest warrant or by probable cause. (*Kaupp v. Texas, supra,* 538 U.S. at p. 630.) Probable cause exists when the facts known to the arresting officer would persuade someone of "reasonable caution" that the person to be arrested has committed a crime. (*Dunaway v. New York* (1979) 442 U.S. 200, 208, fn. 9 [60 L.Ed.2d 824, 99 S.Ct. 2248].) "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts . . . ." (*Illinois v. Gates* (1983) 462 U.S. 213, 232 [76 L.Ed.2d 527, 103 S.Ct. 2317].) It is incapable of precise definition. (*Maryland v. Pringle* (2003) 540 U.S. 366, 371 [157 L.Ed.2d 769, 124 S.Ct. 795, 800].) " 'The substance of all the definitions of probable cause is a reasonable ground for belief of guilt,' " and that belief must be "particularized with respect to the person to be . . . seized." (*Ibid.*)

But "not all seizures of the person must be justified by probable cause to arrest for a crime." (*Florida v. Royer* (1983) 460 U.S. 491, 498 [75 L.Ed.2d 229, 103 S.Ct. 1319] (plur. opn. of White, J.).) In *Terry v. Ohio*, *supra*, 392 U.S. 1, the United States Supreme Court created a limited exception that allows police officers to "stop and . . . frisk for weapons" when they have an "articulable suspicion [the] person has committed or is about to commit a crime." (*Florida v. Royer*, *supra*, at p. 498.) Thus, an officer who lacks probable cause to arrest can conduct a brief investigative detention when there is " 'some objective manifestation' that criminal activity is afoot and that the person to be stopped is engaged in that activity." (*People v. Souza*, *supra*, 9 Cal.4th at p. 230; see also *United States v. Cortez* (1981) 449 U.S. 411, 417 [66 L.Ed.2d 621, 101 S.Ct. 690].) Because an investigative detention allows the police to ascertain whether suspicious conduct is criminal activity, such a detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." (*Florida v. Royer*, *supra*, at p. 500; see also *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325] [describing a detention as limited in "duration, scope and purpose"].)

The distinction between a detention and an arrest "may in some instances create difficult line-drawing problems." (*United States v. Sharpe* (1985) 470 U.S. 675, 685 [84 L.Ed.2d 605, 105 S.Ct. 1568]; see also *United States v. Torres-Sanchez* (9th Cir. 1996) 83 F.3d 1123, 1127 [there is no " 'bright-line for determining when an investigatory stop crosses the line and becomes an arrest' "].) This much is clear: A brief stop and patdown of someone suspected of criminal activity is merely an investigative detention requiring no more than a reasonable suspicion. (*Terry v. Ohio*, *supra*, 392 U.S. at pp. 6–7.) But removing a 17-year-old youth from his bed at 3:00 a.m. and transporting him in handcuffs by patrol car to the police station for questioning has been held to be unreasonable absent probable cause to believe that the youth has committed a crime. (*Kaupp v. Texas*, *supra*, 538 U.S. at p. 630.) In the high court's view, such "involuntary transport to a police station for questioning is 'sufficiently like arres[t] to invoke the traditional rule that arrests may constitutionally be made only on probable cause.' " (*Ibid.*)

Defendant here contends he was subjected to a warrantless arrest when, as he was rolling a large truck tire into the alley behind his house, he was stopped at gunpoint, handcuffed, and made to sit on the ground while police officers walked through the house to determine if anyone posing a danger to their safety was inside. For reasons discussed below, we conclude that stopping and handcuffing defendant, and making him sit on the ground for a few minutes was only an investigative detention.

"[T]here is no hard and fast line to distinguish permissible investigative detentions from impermissible de facto arrests. Instead, the issue is decided

on the facts of each case, with focus on whether the police diligently pursued a means of investigation reasonably designed to dispel or confirm their suspicions quickly, using the least intrusive means reasonably available under the circumstances." (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 384–385 [269 Cal.Rptr. 447]; see also *United States v. Sharpe, supra,* 470 U.S. at pp. 685–688.) Important to this assessment, however, are the "duration, scope and purpose" of the stop. (*Wilson v. Superior Court, supra,* 34 Cal.3d at p. 784.)

With respect to duration, the United States Supreme Court has said that " 'the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion.' " (*United States v. Sharpe, supra,* 470 U.S. at p. 685.)

■ With regard to the scope of the police intrusion, stopping a suspect at gunpoint, handcuffing him, and making him sit on the ground for a short period, as occurred here, do not convert a detention into an arrest. (See *People v. Soun* (1995) 34 Cal.App.4th 1499, 1517 [40 Cal.Rptr.2d 822] [detention when the defendant "was removed from the car at gunpoint by a large number of police officers, was forced to lie on the ground, was handcuffed and placed in a patrol car, was transported from the site of the stop a distance of three blocks to a parking lot," where he was held for 30 minutes]; *In re Carlos M., supra,* 220 Cal.App.3d at p. 384 [detention when the defendant was handcuffed and transported to hospital for identification by rape victim; 30-minute duration]; *Haynie v. County of Los Angeles* (9th Cir. 2003) 339 F.3d 1071, 1077 ["A brief . . . restriction of liberty, such as handcuffing, during a *Terry* stop is not a de facto arrest"]; *Gallegos v. City of Los Angeles* (9th Cir. 2002) 308 F.3d 987, 991 [driver stopped at gunpoint and ordered out of his truck, handcuffed and held in a patrol car for between 45 and 60 minutes was detained, not arrested]; *United States v. Alvarez* (9th Cir. 1990) 899 F.2d 833, 838–839 [investigative detention when the defendant forced at gunpoint to get out of his car]; *United States v. Buffington* (9th Cir. 1987) 815 F.2d 1292, 1300 [no arrest when driver was stopped at gunpoint, ordered out of car and forced to lie on the ground]; *United States v. Bautista* (9th Cir. 1982) 684 F.2d 1286, 1289 [handcuffing did not convert detention into arrest]; but see *People v. Campbell* (1981) 118 Cal.App.3d 588, 595–596 [173 Cal.Rptr. 442] [the defendant functionally under arrest when police at an airport stopped him at gunpoint, handcuffed him, and took him to an office for questioning; restraint went beyond that "reasonably necessary for a detention"].)

■ Of significance too are the facts known to the officers in determining whether their actions went beyond those necessary to effectuate the purpose

of the stop, that is, to quickly dispel or confirm police suspicions of criminal activity. (*Florida v. Royer, supra,* 460 U.S. at p. 500; *In re Carlos M., supra,* 220 Cal.App.3d at p. 384.) Although a routine traffic stop would rarely justify a police officer in drawing a gun or using handcuffs, such actions may be appropriate when the stop is of someone suspected of committing a felony.

Here, Detective Strain had reason to suspect that defendant was concealing either drugs or drug proceeds in the large truck tire he was rolling out the back door of his house toward a waiting pickup truck driven by Ordaz. Faced with two suspects, each of whom might flee if Detective Strain stopped one but not the other, it was not unreasonable for him to draw his gun to ensure that both suspects would stop. Doing so did not turn defendant's investigative detention into an arrest; nor did the use of handcuffs or making defendant sit on the ground for the few minutes it took Strain and his fellow officers to walk through defendant's 500-square-foot house to ascertain the presence of persons posing a danger to the officers.[1]

We next decide whether, as defendant contends, the warrantless police entry into defendant's house was an unreasonable search.

### III

■ The federal and state Constitutions prohibit not only unreasonable seizures but also unreasonable searches. (U.S. Const., 4th & 14th Amends.; Cal. Const., art. I, § 13.) "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " (*Welsh v. Wisconsin* (1984) 466 U.S. 740, 748 [80 L.Ed.2d 732, 104 S.Ct. 2091].) A warrantless entry is "presumptively unreasonable." (*Payton v. New York* (1980) 445 U.S. 573, 586 [63 L.Ed.2d 639, 100 S.Ct. 1371].) This presumption can be overcome by a showing of one of the few "specifically established and well-delineated exceptions" to the warrant re-quirement (*Katz v. United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 88 S.Ct. 507]), such as " 'hot pursuit of a fleeing felon, or imminent destruction of evidence, . . . or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling' " (*Minnesota v. Olson* (1990) 495 U.S. 91, 100 [109 L.Ed.2d 85, 110 S.Ct. 1684]). The United States Supreme Court has indicated that entry into a home based on exigent circumstances requires *probable cause* to believe that the entry is justified by one of these factors such as the imminent destruction of evidence or the need to prevent a suspect's escape. (*Ibid.*)

■ One recognized exigent circumstance that will support the warrantless entry of a home—the risk of danger to police or others on the scene—also

---

[1] Inside, the officers saw a large wooden box containing uniformly sized wrapped packages, which Detective Strain described as "numerous kilos" of what he surmised to be cocaine.

provides the justification for a "protective sweep" of a residence under the high court's decision in *Buie, supra,* 494 U.S. 325.

In *Buie,* the defendant and another man robbed a restaurant. One of the robbers was wearing a red jogging suit. Police obtained an arrest warrant for the defendant and executed it at his house. There, one officer shouted into the basement for everyone to come up. When the defendant did so, he was promptly arrested. Another officer then entered the basement " 'in case there was someone else' down there." (*Buie, supra,* 494 U.S. at p. 328.) In plain view the officer saw a red jogging suit, which he seized. (*Ibid.*) Charged with the restaurant robbery, the defendant moved to suppress the jogging suit. The trial court denied the motion. That ruling was overturned by the Maryland Court of Appeals, that state's highest tribunal, which invalidated the search because the officers lacked *probable cause* to search the basement. (*Id.* at p. 329.) That decision, in turn, was vacated by the United States Supreme Court, which concluded that the probable cause standard did not apply to a "protective sweep." (*Id.* at pp. 327, 337.) The court explained that as incident to an arrest "the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." (*Id.* at p. 334 [describing the limited search incident to arrest authorized by *Chimel v. California* (1969) 395 U.S. 752, 762 [23 L.Ed.2d 685, 89 S.Ct. 2034]].) But it stressed that beyond that, an inspection undertaken outside the immediate area of the arrest must be supported by "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." (*Buie, supra,* at p. 334.) The high court then remanded the case to the Maryland Court of Appeals to reconsider whether the prosecution's evidence at the suppression hearing was sufficient to justify the officer's entry into the basement as a "protective sweep" under the reasonable suspicion standard articulated in *Buie.* (*Id.* at p. 337.)

In authorizing the protective sweep of the defendant's house in *Buie, supra,* 494 U.S. 325, the high court drew on principles set out in *Terry v. Ohio, supra,* 392 U.S. 1. That decision allowed officers, incident to an on-the-street detention, to conduct "a limited patdown for weapons where a reasonably prudent officer would be warranted in the belief, based on 'specific and articulable facts,' and not on a mere 'inchoate and unparticularized suspicion or "hunch," ' 'that he is dealing with an armed and dangerous individual.' " (*Buie, supra,* at p. 332, quoting *Terry v. Ohio, supra,* at pp. 21, 27.) *Buie* recognized that with "an arrest in the home," there existed "an analogous interest of the officers in taking steps to assure themselves that the

house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." (*Buie*, at p. 333.)

■ From the high court's decision in *Buie, supra,* 494 U.S. 325, we draw these conclusions: A protective sweep of a house for officer safety as described in *Buie, does not* require probable cause to believe there is someone posing a danger to the officers in the area to be swept. (*Buie, supra,* at p. 327.) A *Buie* sweep is unlike warrantless entry into a house based on exigent circumstances (one of which concerns the risk of danger to police officers or others on the scene); such an entry into a home must be supported by *probable cause* to believe that a dangerous person will be found inside. (See *Minnesota v. Olson, supra,* 495 U.S. 91, 100.) A protective sweep can be justified merely by a *reasonable suspicion* that the area to be swept harbors a dangerous person. (*Buie, supra,* at p. 327.) Like the limited patdown for weapons authorized by *Terry v. Ohio, supra,* 392 U.S. 1, 21, 27, a protective sweep may not be based on "a mere 'inchoate and unparticularized suspicion or "hunch . . . ." ' " (*Buie, supra,* at p. 332.)

In *Buie, supra,* 494 U.S. 325, the officer who conducted the protective sweep of the defendant's basement did so while already lawfully inside the house to serve an arrest warrant. Given these facts, questions arise whether *Buie*'s lowered level of justification—reasonable suspicion that a person posing a danger to the officers is in the area to be searched—is limited only to those situations in which the officers are already lawfully inside a house conducting an arrest, or whether it will support the entry into a house, as in this case, by officers who lack probable cause to make an arrest but who have lawfully detained a suspect just outside. Appellate courts have differed regarding the requirements for a protective sweep. Some have concluded, consistent with the facts presented in *Buie,* that a protective sweep must be "incident to" a lawful arrest inside a house. (See *United States v. Davis* (10th Cir. 2002) 290 F.3d 1239, 1242, fn. 4 [protective sweep must be "incident to" lawful arrest inside a house]; *United States v. Reid* (9th Cir. 2000) 226 F.3d 1020, 1027 [when a suspect is detained after fleeing an apartment, *Buie* does *not* authorize protective sweep of the apartment].) Other courts have upheld protective sweeps when the officers were lawfully inside a house for some purpose other than to arrest a suspect. (See *United States v. Gould* (5th Cir. in bank 2004) 364 F.3d 578 [officers lawfully inside house with consent can conduct a protective sweep for officer safety]; *United States v. Daoust* (1st Cir. 1990) 916 F.2d 757 [upholding protective sweep incident to serving a search warrant].) Still others have allowed a protective sweep of a house when the officers were not inside the house at all, but had arrested a suspect just outside; in these cases the officers then entered the house to conduct the sweep. (See *United States v. Wilson* (5th Cir. 2001) 306 F.3d 231, 238–239; *United States v. Watson* (5th Cir. 2001) 273 F.3d 599, 603; *Sharrar v. Felsing*

(3d Cir. 1997) 128 F.3d 810, 823; *United States v. Colbert* (6th Cir. 1996) 76 F.3d 773; *United States v. Henry* (D.C. Cir. 1995) 310 U.S. App. D.C. 431 [48 F.3d 1282, 1284].)

Those cases upholding the entry of a house for a protective sweep after police had made an arrest outside the house relied on the rationale that "in some circumstances, an *arrest* taking place just outside a home may pose an equally serious threat to the arresting officers" as one conducted inside the house. (*United States v. Colbert, supra,* 76 F.3d at p. 776, italics added; accord, *Sharrar v. Felsing, supra,* 128 F.3d at p. 824.) Would that rationale also apply when officers enter a home to conduct a protective sweep after lawfully detaining a suspect outside the residence? (See *State v. Revenaugh* (1999) 133 Idaho 774, 776–777 [992 P.2d 769, 771–772] [upholding warrantless entry of house as "protective sweep" after officers detained the defendant on his front porch on suspicion of drug possession].) That is an issue we need not resolve here because the facts known to the officers when they entered defendant's house fell short of the reasonable suspicion standard necessary to justify a protective sweep under *Buie, supra,* 494 U.S. 325.

█  When, as here, we review a ruling on a defense motion to suppress evidence, we defer to the trial court's factual findings, but we independently apply the requisite legal standard to the facts presented. (*People v. Ayala* (2000) 23 Cal.4th 225, 255 [96 Cal.Rptr.2d 682, 1 P.3d 3]; *People v. Alvarez* (1996) 14 Cal.4th 155, 182 [58 Cal.Rptr.2d 385, 926 P.2d 365].) Officer Strain testified that the officers had on April 26 and 27, 2000 conducted a surveillance of defendant's house on A Street in San Diego. During that time, the officers noted the presence of defendant's wife and "possibly a male juvenile" in the home. But when on the afternoon of April 27th the officers entered defendant's house for a protective sweep just moments after detaining defendant in his backyard as he rolled a large truck tire toward Ordaz's waiting truck in the alley, they had no knowledge of the presence of anyone in defendant's house. As the trial court found, the officers "had not been keeping track of who was in the house"; thus, when they entered the house to conduct a protective sweep, they did so without "any information as to whether anyone was inside the house." Also, there is no indication that when stopped by the officers, either defendant or Ordaz was armed. Moreover, until defendant later consented to a search of the large truck tire he was rolling from the back door of his house toward the alley, the officers were unaware that the tire (like the similar tires found in the two Los Angeles County investigations we discussed earlier) had been cut open and then resealed to conceal cocaine.    █    The facts known to the officers before they performed the protective sweep fell short of what *Buie* requires, that is, "articulable facts" considered together with the rational inferences drawn from those facts, that would warrant a reasonably prudent officer to entertain

a reasonable suspicion that the area to be swept harbors a person posing a danger to officer safety. (*Buie, supra*, 494 U.S. at pp. 327, 334.)

Unquestionably, the work of a police officer in the field is often fraught with danger. At any given moment, a seemingly safe encounter or confrontation with a citizen can suddenly turn into an armed and deadly attack on the officer. Society's interest in protecting police officers must, however, be balanced against the constitutionally protected interest of citizens to be free of unreasonable searches and seizures. In considering both interests, the United States Supreme Court has articulated certain legal rules, allowing, for instance, a warrantless entry into a home when exigent circumstances exist, or permitting a protective sweep of areas of a home where persons in hiding may pose a danger to officer safety. As we mentioned earlier, when the entry of a house for officer safety is based on exigent circumstances, the officers must have probable cause to believe that a dangerous person will be found inside. (See *Minnesota v. Olson, supra*, 495 U.S. 91, 100.) But a protective sweep, as described by the high court in *Buie, supra*, 494 U.S. 325, can be justified by a standard lower than probable cause, namely, reasonable suspicion. (*Id.* at p. 327.) Because, as we explained on page 679, *ante*, that lower standard was not satisfied here, it follows that the higher standard requiring probable cause was not met either.

Because neither standard was met, the police entry into defendant's home was "presumptively unreasonable." (*Payton v. New York, supra*, 445 U.S. 573, 586.)

### Disposition

The judgment of the Court of Appeal is reversed. On remand, the trial court is to set aside defendant's guilty plea, vacate the order denying defendant's motion to suppress evidence, and to reconsider that motion in light of our conclusions here.

George, C. J., Baxter, J., Chin, J., Brown, J., and Moreno, J., concurred.

**WERDEGAR, J.,** Concurring.—I concur in the majority's conclusion the police entry into defendant's home was unlawful. Unlike the majority, however, I would resolve the case simply by application of the established principle that, lacking probable cause, the officers' warrantless entry into defendant's home was in violation of his Fourth Amendment right to be free from unreasonable search and seizure. (*Minnesota v. Olson* (1990) 495 U.S. 91, 100 [109 L.Ed.2d 85, 110 S.Ct. 1684].)

In speculating about the application of *Maryland v. Buie* (1990) 494 U.S. 325 [108 L.Ed.2d 276, 110 S.Ct. 1093] (*Buie*) to circumstances admittedly

not present here, i.e., to a detention outside the home when police have a reasonable suspicion that persons inside the home might pose a danger to the officers (maj. opn., *ante*, at pp. 678–679), the majority goes far afield. *Buie* is completely inapposite to this case. *Buie* involved a lawful arrest, pursuant to a warrant, effected inside the defendant's home. The high court held only that, incident to such an arrest, the officers could conduct a protective sweep of the immediate area of the arrest for purposes of officer safety and, on reasonable suspicion, a protective sweep of the entire house. (*Buie, supra,* at p. 334.) This case, by contrast, involves a detention, a detention, moreover, effected well ·outside the home and unattended by either probable cause *or* reasonable suspicion to believe dangerous persons would be found inside the house.

As the majority recognizes, "[t]he United States Supreme Court has indicated that entry into a home based on exigent circumstances requires *probable cause* to believe that the entry is justified" (maj. opn., *ante*, at p. 676). The high court also has recognized that, *incident to a lawful arrest within a home*, a protective sweep of the home beyond the immediate area of the arrest may be justified by reasonable suspicion. (*Buie, supra,* 494 U.S. at p. 334.) This case involves neither. Here police detained defendant outside his home. Accordingly, their warrantless entry into the home unsupported by probable cause violated his Fourth Amendment right to be free from unreasonable search and seizure. Our opinion need say no more.