Filed 5/22/13  P. v. Wolfe CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRADLEY ALLEN WOLFE,<br><br>        Defendant and Appellant. | A135878<br><br>(Sonoma County<br>Super. Ct. No. SCR612853) |

Appellant Bradley Allen Wolfe pleaded no contest to unlawful possession of an assault weapon (former Pen. Code, § 12280, subd. (b))[1] after the trial court denied his motion to suppress evidence seized during a search of his bedroom.  On appeal, he contends the trial court erred in refusing to suppress the evidence.  We affirm.

I.
FACTUAL AND
PROCEDURAL HISTORY

On August 16, 2010, Sonoma County deputy sheriffs came across a locked bedroom while performing a parole search of the Rohnert Park home of appellant's brother, Steven Wolfe.[2]  As described in more detail below, the officers entered the room and did a protective sweep.  Although no one was in the room at the time, the officers saw documents suggesting that the room was inhabited by Bradley.  After learning that

_____

[1] All further statutory references are to the Penal Code.

[2] Since the brothers share the same surname, they will be identified solely by their first names throughout the remainder of this opinion.

1

Bradley was on probation, the officers searched the room and found weapons and ammunition. The issues in this appeal arise out of the legality of the officers' entry into the bedroom.

The decision to search Steven's house was made earlier in the day by Deputy Sheriff Marcus Holton who had received information that Steven possibly had been watching the home of a police chief in a nearby town. Steven had a history of assaulting law enforcement personnel and was on parole for threatening a police officer (§ 69). Holton assembled a search team, consisting of him and five other officers, supported by a sheriff's helicopter.

When the search began, the officers' first objective was to secure the single-story residence by performing a protective sweep. The officers encountered no one and saw nothing unusual, except they discovered a locked bedroom door. They knocked on the door, but no one responded. An officer attempted to look into the room through an outside window, but the blinds were shut.

The locked door gave Holton a heightened concern for the officers' safety. His concern was partly due to Steven's history of violence against law enforcement officers, but it was also because Holton noticed a strong odor of "green" (as opposed to burnt) marijuana coming from the room, which raised the possibility that someone would have weapons to protect cash or drugs. In addition, officers searching other parts of the house had found a flare gun and pepper spray. Holton believed that a person in the bedroom could fire bullets through the door or walls or come out with a weapon.

One of the officers was posted outside of the locked bedroom while others continued to search different parts of the house. At one point, Holton was told that Steven was at the Cotati Police Department and was claiming that the locked room was inhabited by his brother, Bradley. Holton had no other information from which he could determine whose bedroom it was, and he did not know where Bradley was at the time.

The officers decided to enter the bedroom to make sure no one was hiding in it, and an officer kicked the door open. Holton estimated that they entered the bedroom approximately 15 to 20 minutes after completing the initial protective sweep of the house.

Another officer at the scene, Deputy Sheriff Bryan Jensen, estimated that the amount of time it took before entering the locked room was "pushing" ten minutes.

Once in the bedroom, the officers saw a fishing license and a California identification card with Bradley's name on them. Jensen also noticed mail addressed to Bradley from the County of Solano. He left the room and called the sheriff's department dispatch, from which he learned that Bradley was on probation for a felony conviction in Solano County. Jensen then called and spoke with Bradley's probation officer, who provided an address that matched Steven's and who explained that Bradley was subject to warrantless searches as a condition of his probation.

The officers then searched the bedroom. Holton found an AR-15 rifle hidden in a closet. An ammunition magazine inserted into the weapon was empty, but Holton found additional magazines, at least one of which was loaded. The search also uncovered several large "ziploc" bags containing marijuana, several jars containing marijuana, three samurai swords, and a police scanner.

Bradley was charged in a felony complaint by the Sonoma County District Attorney with unlawful possession of an assault weapon (Colt AR-15 rifle) (former § 12280, subd. (b)), felon in possession of a firearm (former § 12021, subd. (a)(1)), and felon in possession of ammunition (former § 12316, subd. (b)(1)). He pleaded not guilty and moved to suppress evidence, including the AR-15 rifle.

The trial court heard the suppression motion in conjunction with the preliminary hearing. Officers Holton and Jensen testified. In denying the motion to suppress, the court found that it was reasonable for the officers to believe that someone might have been hiding behind the locked bedroom door. Although the court had initially been concerned with the delay between the start of the protective sweep of the house and the time the locked bedroom was finally entered, it found that the delay was sufficiently explained by the officers. The court stated, "Only after failing to secure the room from any other source did they make forcible entry to effectuate the protective sweep."

Bradley renewed his motion to suppress after the information was filed. The trial court again denied the motion, finding the officers had adequately articulated reasons to

3

enter the locked room, "[w]hether it took five minutes, 10 minutes, 15 minutes or 20 minutes."

After the trial court again denied his motion to suppress, Bradley changed his plea to no contest to the assault weapon charge. The other charges were dismissed. The trial court sentenced Bradley to 16 months in county jail.

II.
DISCUSSION

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

Warrantless searches and seizures inside a home are presumptively unreasonable under the Fourth Amendment of the United States Constitution. (*People v. Troyer* (2011) 51 Cal.4th 599, 602.) There are, however, a number of exceptions to this rule, and two of them are implicated in this case. The first allows officers to perform a protective sweep without a warrant, and the second allows officers to search areas under the complete or joint control of a parolee or probationer who has agreed to warrantless searches as a condition of supervision.

In this case, the prosecutor argued that the entry into the bedroom was justified under both of these exceptions because it was a legitimate part of Steven's parole search, and it was part of a lawful protective sweep. The trial court, however, never ruled on whether the entry was permissible as a part of Steven's parole search because it concluded that it was part of a lawful protective sweep. On appeal, the parties limit their

4

arguments to the correctness of the trial court's ruling regarding the protective-sweep issue.[3]

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." (*Maryland v. Buie* (1990) 494 U.S. 325, 327.) A protective sweep can be justified by a "reasonable belief" that the area to be swept harbors a dangerous person. (*Id.* at p. 337.) That belief, however, must be supported by articulable facts, together with the rational inferences from those facts. (*Id.* at pp. 333-334; see also *People v. Celis* (2004) 33 Cal.4th 667, 678 (*Celis*).)

Bradley contends the totality of the circumstances failed to justify the protective sweep of his bedroom. He recognizes that the parole search of Steven's house preceded by a protective sweep of the areas under Steven's control was "arguably" justified. (See *People v. Ledesma* (2003) 106 Cal.App.4th 857, 864 [protective sweep may precede a probation search]). But he maintains that the officers needed a warrant to enter his bedroom. He argues that a protective sweep of the bedroom was unwarranted and unnecessary because the officers knew that Steven was at the Cotati police station, had reason to believe the bedroom was not Steven's because it was locked, had minimized safety risks by posting a deputy outside the bedroom door, and had not heard any sounds coming from inside the room. He contends that the officers were facing no real threat, but only an abstract, theoretical possibility of one. (*Id.* at p. 866 [abstract theoretical

---

[3] Under the exception permitting warrantless searches of persons on parole or probation, officers "generally may only search those portions of the residence they reasonably believe the probationer [or parolee] has complete or joint control over." (*People v. Woods* (1999) 21 Cal.4th 668, 682.) In light of our conclusion that the search of the bedroom in this case was lawful under the protective-sweep exception, we need not resolve whether the officers could have reasonably believed that the room was under Steven's complete or joint control (and therefore lawful as part of Steven's parole search).

possibility someone dangerous might be inside residence does not justify protective sweep].)

We believe, on the contrary, that the safety concerns articulated by Holton and Jensen were reasonable. Steven had a history of assaulting law enforcement officers, and his residence was being searched because he may have been surveilling the home of a police chief in a nearby town. The officers had reason to be extra careful. At the hearing on the motion to suppress, Holton testified, "My concern was that somebody was hiding inside the bedroom, you know, just it makes your hair on the back of your neck stand up when you search an entire house, here's this locked bedroom of a parolee's residence who has assaults against law enforcement." Holton also mentioned that, in his experience, there is usually someone hiding inside a locked room when he comes across one during a search.

Other facts added to the legitimacy of the officers' concerns about the potential dangerousness of the locked room. The odor of marijuana coming from the room raised the possibility that someone was in it and hiding and may have had weapons to defend cash or drugs. Moreover, officers had found a flare gun and pepper spray in another bedroom of the house. While posting an officer outside the bedroom was prudent to help secure the room, it did not eliminate all threats. Holton, a firearms instructor and SWAT team member, testified that bullets fired from inside the room would have gone through the door or the walls.

The officers' reasonable security concerns would not have been eliminated simply because the officers discovered that Steven, while at the Cotati Police Department, had said that the bedroom was Bradley's. First, Bradley's whereabouts were unknown, which raised a reasonable possibility that, if the room was his, he was in it. Second, officers are not required to unquestionably accept the assertion of a suspect—one whose residence is being searched while he is in custody and has little reason to be cooperative and truthful—that a locked room in the premises is someone else's. As Holton pointed out, there was "no indication that [the bedroom] belonged to . . . anybody else other that Steven Wolfe saying it belonged to his brother."

The fact that between 10 and 20 minutes elapsed before the officers entered the bedroom does not render the entry unlawful. Substantial evidence was presented to the trial court showing that the delay was explained by Holton's practice of being cautious when searching areas of a house that may not clearly belong to the suspect, and the officers' efforts to gather information about the locked room. In any event, nothing was revealed in those 10 to 20 minutes that alleviated reasonable concerns that someone with weapons might be hiding in the bedroom.

Bradley cites *Celis, supra,* 33 Cal.4th 672 in support of his arguments. In *Celis*, the California Supreme Court found that a protective sweep of a house was unreasonable because the officers had no information that anyone was inside the house or that anyone associated with the house was armed. (*Id.* at p. 679.) Bradley argues the same facts are present here: the officers knew that Steven was at the police station, they had no knowledge that anyone was in the bedroom, and there was no indication that anyone associated with the room was armed.

But the facts in *Celis* are distinguishable. In *Celis*, the police were conducting surveillance on the residence of a man suspected of transporting drugs in truck tires. When they saw the man rolling a truck tire down the alley behind his house, they detained him. The officers decided to enter the house after a detective noted the man's wife and possibly a " 'male juvenile' " lived in it. (*Celis, supra,* 33 Cal.4th at p. 672.) Under these facts, the Supreme Court expressed uncertainty that a protective sweep was permissible following the detention outside the residence. (*Id.* at p. 679.) The court ultimately declined to resolve that issue, and instead found the facts known to the officers "fell short of what [*Maryland v.*] *Buie* [494 U.S. 325] requires." (*Ibid*.)

In contrast to the officers in *Celis, supra*, 33 Cal 4th 667, Holton and his team were lawfully in the residence, and the home belonged to a parolee who had a history of violence against law enforcement officers. A case more on point is *People v. Ledesma, supra,* 106 Cal.App.4th 857, in which the court approved a protective sweep in conjunction with a probation search: "The officers' safety concerns were increased by the probable duration of the search, the fact that it would occur on their 'adversary's

7

"turf" ' [quoting *Buie*], and the inherent distraction of conducting a careful examination of all the nooks and crannies of a probationer's bedroom." (*Id.* at p. 864.) The phrase " 'adversary's "turf" ' " is particularly apt to describe the situation here given Steven's history of conflict with law enforcement agents.

Bradley also relies on *People v. Ormonde* (2006) 143 Cal.App.4th 282. Once again, however, the facts of *Ormonde* involve an arrest outside of a residence and are easily distinguishable from the facts in this case. In *Ormonde*, the police received a domestic violence report, went to the address they were given (an apartment building), and arrested the suspect outside the building. A detective on the scene believed that the suspect had come from a nearby apartment. He decided to enter the apartment because he felt " 'vulnerable' " and thought somebody might come out with a weapon, even though there was no information that there was another suspect, that the victim was in the apartment, or that any weapons were involved. (*Id.* at pp. 286-287.) The appellate court concluded neither the specific facts nor a general apprehension about domestic violence justified entering the apartment for a protective sweep. (*Id.* at p. 295.)

For the same reasons *Celis, supra*, 33 Cal.4th 667 is not on point, neither is *People v. Ormonde, supra*, 43 Cal.App.4th 282. The Sonoma County sheriffs' deputies were lawfully in Steven's residence to perform a parole search. And, as discussed above, they had reasonable and legitimate safety concerns that justified a protective sweep of the locked bedroom.

We conclude the trial court properly denied the motion to suppress evidence.

8

## III.
## DISPOSITION

The judgment is affirmed.

_____
Humes, J.

We concur:

_____
Ruvolo, P.J.

_____
Reardon, J.