Filed 7/1/15  P. v. Bizieff CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANASTASIA BIZIEFF,<br><br>    Defendant and Appellant. | F068555<br><br>(Super. Ct. No. BF149976A)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Linda J. Zachritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Gomes, Acting P. J., Detjen, J. and Franson, J.

Appellant Anastasia N. Bizieff was charged with three felonies: possession of a loaded firearm while under the influence of methamphetamine (Health & Saf. Code, § 11550, subd. (e)); possession of a billy, blackjack, etc. (Pen. Code, § 22210); and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)). Appellant was also charged with two misdemeanors: being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)); and possession of controlled substance paraphernalia (former Health & Saf. Code, § 11364.1). It was further alleged that the felonies were committed while appellant was released from custody for a different, pending felony case. (Pen. Code, § 12022.1.)

Appellant moved to suppress evidence seized pursuant to a "protective sweep" search, alleging that a warrantless search of her residence did not meet any exception under the Fourth Amendment. The trial court denied the motion.

On November 14, 2013, appellant pled no contest to the charges for possession of the billy club and possession of a controlled substance in exchange for probation and one year in county jail. The prosecutor agreed to dismiss the remaining charges. On December 12, 2013, imposition of sentence was suspended and probation was granted for a term of three years. Appellant received 248 days for time served and statutory credit. The court also imposed various fines.

On appeal, appellant contends that the trial court erred when it denied her motion to suppress evidence seized pursuant to the search because there was insufficient justification for the protective sweep. She argues that the search violated her Fourth Amendment rights under the United States Constitution and that the trial court's denial of her motion must be reversed.

We reject her contention and affirm.

2.

## STATEMENT OF THE FACTS[1]

On July 31, 2013, at approximately 1:30 a.m., Kern County Sheriff's Deputies Ken Young and Edward Tucker responded to a residence to investigate a theft. Appellant reported the theft and was living at the residence at that time. Appellant met Deputies Young and Tucker at the back gate of her property and lead them inside. The residence had two stories with a split flight of stairs leading to the second-floor loft. On the second floor, there was an open area that looked down over the living room and dining room. After they walked in, appellant sat down on the second stair.

Deputy Young noticed that appellant appeared to be under the influence of drugs. He asked if she had recently used methamphetamine, and appellant said that she had but was not currently under the influence of the drug. Deputy Young conducted a field sobriety test. At some point during the conversation with appellant, Deputy Tucker alerted Deputy Young to a weapon lying, in plain view from where they were standing at the bottom of the staircase, on the kitchen counter. It was a two-foot long billy club with a sharpened spike protruding from one end.

After discovering the club and believing that appellant might have been under the influence, Deputy Tucker decided to conduct a protective sweep of the second floor while Deputy Young continued the field sobriety test on appellant. Deputy Young testified that the second floor looked out over the main floor, and it would not have been possible for him to see a threat coming from above if there was one. Deputy Tucker walked up the stairs, announcing his presence and received no answer. Upon reaching the second floor, he noticed it had a "wide range view" of the floor below. In the first bedroom on the second floor, he saw a rifle case lying next to the bed. He also found a loaded semi-automatic shotgun, video surveillance equipment, and drug paraphernalia in the

---

**1**     The facts are drawn from the evidence presented at the hearing on the motion to suppress held on October 24, 2013.

3.

bedroom's walk-in closet. Deputy Tucker then cleared the other upstairs rooms and found several more knives and other "edged and blunt-type weapons," as well as evidence of appellant's recent prior arrest and glass pipes with residue consistent with methamphetamine. He did not find anyone in the upstairs area.

Prior to the protective sweep, Deputy Young informed Deputy Tucker that he had responded to a call at appellant's residence approximately 11 days before, on or about July 20, 2013, for the brandishing of a firearm. During Deputy Young's response on July 20, he observed several people throughout the residence, including a parolee named Jeremy Holiday. Deputy Tucker knew of Holiday and also knew that he went by the moniker "Pokey" because he had a reputation for stabbing people in fights. Deputy Tucker testified that, during his conversations with appellant on the July 31 visit, appellant said she knew Holiday and indicated to the deputies that she had prior dealings with him. She also implied that Holiday may have been involved with "whatever was going on" that night.

Both Deputy Young and Deputy Tucker testified that they did not recall hearing noises coming from the upstairs section of the house.[2] Each also testified that they did not recall asking appellant if anyone else was in the house. Deputy Tucker further testified that it would not have mattered how appellant responded to such an inquiry, if there was one, because he still would have done a protective sweep of the upstairs area.

**DISCUSSION**

*Standard of Review*

The standard of review of a trial court's ruling on a motion to suppress is governed by well-established principles. (*People v. Ormonde* (2006) 143 Cal.App.4th 282, 290 (*Ormonde*).) When there is no controversy concerning the underlying facts, as is the case

2. Deputy Young testified that he recalled seeing several dogs in the house and that he might have heard noises coming from upstairs. Deputy Tucker did not recall hearing any dogs.

4.

here, the only issue is whether the law, as applied to the facts, was violated. (*People v. Werner* (2012) 207 Cal.App.4th 1195, 1203 (*Werner*).) Thus, we must defer to the trial court's factual findings and independently apply the requisite legal standard to the facts presented. (*People v. Celis* (2004) 33 Cal.4th 667, 679 (*Celis*).)

Appellant contends that the trial court erred in denying her motion to suppress because the warrantless search of her home was not supported by the protective sweep exception to the warrant requirement of the Fourth Amendment of the United States Constitution and article I, section 13 of the California Constitution. We disagree.

*Applicable Law and Analysis*

An entrenched rule of constitutional law is that the Fourth Amendment bars unreasonable searches and seizures. (*Maryland v. Buie* (1990) 494 U.S. 325, 331 (*Buie*).) When determining reasonableness, a balance must be struck between the intrusion on an individual's Fourth Amendment rights and "its promotion of legitimate governmental interests." (*Ibid.*) Searches of a house, for instance, are generally not reasonable without a warrant issued on probable cause. (*Ibid.*) Nevertheless, because of the need to balance these competing interests, there are exceptions where neither a warrant nor probable cause is required. (*Ibid.*) One such exception is the protective sweep.

A protective sweep is "a quick, limited premises search incident to a lawful arrest at a residence." (4 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Illegal Evidence, § 346, p. 1210.) The rationale for a protective sweep is to protect officers from an immediate risk of harm at the site of an arrest.[3] (*Buie, supra,* 494 U.S. at p. 333 [analogizing the safety concerns of a protective sweep to those associated with a "frisk" as established in *Terry v. Ohio* (1968) 392 U.S. 1, or a search of a car for weapons in

---

[3]    The protective sweep is not limited to circumstances immediately following an arrest. It may also occur in conjunction with detention or a valid probation search. (*Werner, supra,* 207 Cal.App.4th at p. 1206; see also *People v. Ledesma* (2003) 106 Cal.App.4th 857, 864 [protective sweep may precede a probation search].)

*Michigan v. Long* (1983) 463 U.S. 1032].)  "[A]n in-home arrest puts the officer at the disadvantage of being on his adversary's 'turf.'  An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings." (*Buie*, *supra*, at p. 333.)  However, the interest of protecting individual privacy restricts the scope of the sweep.  The protective sweep exception does not permit a full search of the premises.  It is limited to a "cursory inspection of those spaces where a person may be found." (*Id.* at p. 335.)

A protective sweep "'does *not* require probable cause to believe there is someone posing a danger to the officers in the area to be swept.'" (*Werner*, *supra*, 207 Cal.App.4th at p. 1205.)  Rather, it can be justified when there is merely "'a *reasonable suspicion* that the area to be swept harbors a dangerous person.'" (*Ibid*.)  However, it cannot be based on an ""'"unparticularized suspicion or 'hunch.'"'" (*Celis*, *supra*, 33 Cal.4th at p. 678.)  The test, as established in *Buie*, "requires a reasonable suspicion *both* that someone is in the premises *and* that that person is dangerous." (*Werner*, *supra*, at p. 1206.) The existence of a reasonable suspicion is determined by the totality of the circumstances and whether officers had ""'"a particularized and objective basis"'" for his or her suspicion." (*Ibid*.)  It must be shown that "articulable facts," known to the officers before the protective sweep began and considered with the rational inferences drawn from those facts, existed that "would warrant a reasonably prudent officer to entertain a reasonable suspicion that the area to be swept harbors a person posing a danger to officer safety." (*Celis*, *supra*, at pp. 679-680.)

With these principles in mind, we consider the evidence in this case.  The record does not support appellant's contention that Deputy Tucker lacked a reasonable suspicion as required under *Buie*.  On the contrary, facts from the scene and inferences drawn from those facts support a reasonable suspicion that someone could have been in the house and posed a viable threat to the officers from the second floor of the residence.  Appellant mentioned her association with Jeremy Holiday to the deputies, a violent criminal with a

reputation for stabbing others, and implied that he may have been involved with the events that caused her to call the police; the deputies knew that Holiday was recently present in the house; they were concerned about their exposure to a potential attack from the second floor; and they observed a spiked billy club in the kitchen. Additionally, the deputies were aware of the potential presence of a firearm based on a firearm call 11 days prior. The totality of the circumstances gave the deputies reasonable suspicion to believe that the residence harbored one or more dangerous persons who might threaten their safety.

Appellant contends that because neither deputy could recall asking whether anyone else was in the house and neither testified to hearing noises coming from other areas of the residence, they lacked the reasonable suspicion necessary to justify the sweep. She relies on a number of recent California cases to support her argument. However, the facts of each are distinguishable from the circumstances described here.

For instance, in *Celis*, *supra*, 33 Cal.4th at p. 672, officers detained the defendant and his accomplice outside his residence, which had been under surveillance for drug trafficking. The officers then entered the home to conduct a protective sweep based solely on one-day-old surveillance observations showing defendant's wife and a male juvenile in the house. (*Ibid*.) The officers found a box, large enough to hold a person, which contained cocaine. (*Ibid*.) The California Supreme Court held that the facts known to the officers when they entered the house fell short of a reasonable suspicion necessary to justify the sweep. (*Id*. at pp. 679-680.) The court reasoned that officers had no knowledge that anyone was inside on the day they detained the defendant, there was no indication that the suspects were armed, and the officers had no indication that house harbored a dangerous person. (*Id*. at p. 679.) Similarly, in *Ormonde*, *supra*, 143 Cal.App.4th at p. 287, officers, responding to a domestic violence call, detained a suspect outside the defendant's apartment and entered the apartment for a protective sweep. Although the officer in that case had no reason to believe anyone was in the apartment,

7.

he conducted the sweep to ensure the safety of the officers based on a general concern about the dangerous nature of domestic violence calls. (*Id*. at p. 294.) The court held that a general apprehension of danger, based solely on the nature of the call, was not enough to amount to a reasonable suspicion that a potentially dangerous person was inside the apartment. (*Id.* at p. 295; see also *Werner*, *supra*, 207 Cal.App.4th at p. 1209 [a mere abstract possibility that a dangerous person might be present is not enough to justify a protective sweep].)

Contrary to the circumstances in *Celis* and *Ormonde*, Deputies Young and Tucker had more than a generalized apprehension of danger. Their testimony demonstrates that they had a reasonable suspicion that someone else, capable of threatening their safety, may have been in appellant's house. Deputy Tucker observed a sharpened weapon in plain view inside appellant's home. Appellant mentioned that she knew Holiday and implied that he may have been involved in the events that led her to call the police that night. Deputy Tucker had prior contacts with Holiday and was familiar with his reputation for stabbing people. Deputy Young also told Deputy Tucker that he had seen Holiday at appellant's house 11 days ago. Under the circumstances, Deputy Tucker could have reasonably associated the weapon with Holiday based on appellant's statements and his prior dealings with Holiday. (Cf. *People v. Ledesma, supra,* 106 Cal.App.4th at p. 866 [Officer's observation of a car parked close to defendant's residence was sufficient to create a reasonable possibility that the owner, a known drug dealer, might be inside].) Moreover, the deputies' exposed position beneath the loft area made them particularly vulnerable to an attack from above. Deputy Tucker's sweep was quick and limited to areas where a person could have been hiding—specifically, the upstairs loft area, bedrooms, and walk-in closet. (*Buie*, *supra*, 494 U.S. at p. 334 [In interest of officer safety and without probable cause or reasonable suspicion, officers may "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched"].) Although appellant never confirmed whether

8.

another person was in the house, the facts known to the deputies before the protective sweep began provided a particularized and objective basis to reasonably suspect that the loft area harbored a person who could pose a threat to officer safety.

## DISPOSITION

The judgment is affirmed.