Filed 5/31/16  P. v. Hefner CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>JERRY LANE HEFNER,<br><br>    Defendant and Appellant. | F070085<br><br>(Super. Ct. No. SF017278A)<br><br>**OPINION** |

## THE COURT*

APPEAL from an order of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Clayton D. Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Kane, Acting P.J., Detjen, J. and Peña, J.

Appellant Jerry Lane Hefner appeals the denial of his motion to suppress evidence obtained during the search of a vehicle in which he was a passenger. Appellant claims the trial court wrongly found probable cause existed for the search based on the testimony of Kern County Sheriff's Deputies Daniel Juarez and Raymond Seibert. For the reasons set forth below, we affirm.

### FACTUAL[1] AND PROCEDURAL BACKGROUND

On June 23, 2013, Deputies Juarez and Seibert were in a marked patrol vehicle on Highway 99, traveling at a set speed of 70 miles per hour, when they were passed by a silver Honda Civic traveling at between 85 and 90 miles per hour and swerving between two lanes. The deputies stopped the Civic, and Deputy Seibert began to approach the vehicle on the passenger side.

As Deputy Seibert approached, he heard the driver yelling for him to show his photo identification. Deputy Seibert took a position slightly behind the dividing bar between the front and rear of the vehicle, on the passenger's side. This technique, called "pieing out," allows the deputy to see more of the inside of the vehicle while allowing the occupants to see less of the deputy. From this position, and using his flashlight, Deputy Seibert looked into the vehicle through the open passenger-side window.

Deputy Seibert noticed an opening above the gear box, in the center console of the vehicle where the radio and air conditioner controls would normally be located. Within that compartment he saw the "butt of a revolver sticking out."

Deputy Seibert informed his partner there was a gun in the vehicle and pulled out his weapon. Both occupants of the vehicle, including appellant, who was sitting in the passenger seat, were ordered out of the vehicle. The vehicle was searched and a gun was located in the space above the gear box. Two other handguns were also found in the

---

**1** The facts in this matter come from the May 20, 2014, hearing on appellant's motion to suppress.

vehicle, and a loaded magazine was discovered near the dashboard instruments. A substance, believed to be methamphetamine, was located in appellant's pocket.

The driver of the vehicle, Ms. Jeanette Rockey, testified at the suppression hearing. Ms. Rockey stated Deputy Seibert could not have seen a weapon in the center compartment because Ms. Rockey regularly kept her pink handbag in that space, and did so on that day. According to Ms. Rockey, the handbag filled the cavity. Ms. Rockey denied yelling at the deputies, but did admit she was skeptical they were "officers." She alleged to have been the victim of a false-policing event in the past and stated she did not recognize the red and white light pattern on the patrol car because she was accustomed to seeing a red, white, and blue pattern. She also claimed the deputy that approached her vehicle had a disheveled look and smelled of alcohol.

After the trial court heard this testimony and related argument, it took the matter under submission. The next day, in a minute order, the trial court denied appellant's motion to suppress the evidence located in the search of the vehicle and his person. Appellant subsequently pled guilty to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and to carrying a loaded firearm (Pen. Code, § 25850, subd. (a)). Appellant was sentenced to five days in the Kern County jail, with credit for time served, and placed on probation. This appeal timely followed.

## DISCUSSION

Appellant alleges there is insufficient evidence to support the trial court's finding that Deputy Seibert saw a gun. Appellant does not contest the original stop or the validity of the search if Deputy Seibert's testimony is accepted.

### *Standard of Review and Applicable Law*

Our standard of review for a motion to suppress is governed by well-established principles. (*People v. Ormonde* (2006) 143 Cal.App.4th 282, 290.) "As the finder of fact in a proceeding to suppress evidence (Pen. Code, § 1538.5), the superior court is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the

3

testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable." (*People v. Woods* (1999) 21 Cal.4th 668, 673.) "We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard." (*People v. Saunders* (2006) 38 Cal.4th 1129, 1134.) We then independently apply the requisite legal standard to the facts presented. (*People v. Celis* (2004) 33 Cal.4th 667, 679.)

"In reviewing the sufficiency of the evidence, '"[t]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,"' to support the trial court's findings.' [Citation.] 'An appellate court must view the evidence in the light most favorable to [the prevailing party] and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] 'Reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding.'" (*People v. Snead* (1991) 1 Cal.App.4th 380, 384.)

### *Substantial Evidence Supports the Court's Factual Determination*

Appellant argues the court lacked substantial evidence to conclude Deputy Seibert saw a firearm within the vehicle. Appellant does not contest that Deputy Seibert testified to seeing "the butt and the hammer" of a revolver within a compartment when approaching the vehicle. Rather, appellant contends that the remaining evidence in the record, including the testimony of Ms. Rockey, demonstrates Deputy Seibert's testimony was unreliable. We disagree.

As a general principle, Deputy Seibert's testimony is sufficient to support the factual conclusion that he did, in fact, see a firearm when approaching the vehicle. (*People v. White* (2014) 230 Cal.App.4th 305, 319, fn. 14.) Thus, to prevail, appellant must show that Deputy Seibert's testimony should not be credited. "The circumstances in which an appellate court may properly decline to credit testimony are exceptional and rare." (*Ibid.*) "Testimony may be rejected only when it is inherently improbable or

4

incredible, i.e., "'unbelievable *per se*,'" physically impossible or "'wholly unacceptable to reasonable minds.'"" (*Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1065.)

Here, there is nothing inherently improbable or incredible about Deputy Seibert's testimony. Deputy Seibert stated he viewed what appeared to be a firearm in the center console area of the vehicle as he approached from the passenger side with his flashlight on. The gun was positioned in a compartment where the stereo or air conditioning controls would normally be, above the gear box, such that Deputy Seibert could see the "butt of a revolver sticking out." His partner Deputy Juarez confirmed that Deputy Seibert reacted as if he had seen a gun as he approached, yelling "gun" and drawing his own weapon. Deputy Juarez further confirmed that there was an open space in the center console and that a loaded revolver was ultimately located in that compartment, "positioned in a manner where the handle was faced towards—as if someone could actually grab it."

Appellant focuses on several factors that he alleges, in combination, show Deputy Seibert's testimony incredible. First, Deputy Seibert is over six feet tall, while the vehicle is less than five feet in height. Second, appellant, a larger man, was sitting in the passenger seat, obstructing Deputy Seibert's view into the vehicle. Third, the vehicle had dark, tinted windows. Fourth, Deputy Seibert testified that he positioned himself slightly behind the dividing bar between the front and back seats and was vigilantly watching the occupants in the vehicle for potential threats, in conformity with his training. And fifth, Ms. Rockey testified she had placed a large pink purse in the space, such that no weapon was protruding from within.

Given the totality of the record, these factors are not a basis to disregard Deputy Seibert's testimony. Deputy Seibert provided explanatory testimony regarding several of the above factors which supports his core testimony. For example, while admitting to standing slightly behind the dividing bar on the passenger side, to being taller than the car, and to the fact that appellant was in the passenger seat, Deputy Seibert indicated

clearly that he could still see the area where the car stereo would have been. And although the windows may have been tinted, the passenger side window was rolled down when he approached.

Furthermore, the trial court could have reasonably rejected Ms. Rockey's testimony. While Ms. Rockey claimed the purse was present, neither deputy recalled it. And Ms. Rockey's recollection could be reasonably questioned given that she alleged Deputy Seibert initially approached the vehicle smelling of alcohol and in a position where he could look directly into her face when, in contrast, appellant had relied on Deputy Seibert's testimony of approaching from the passenger side to argue the deputy's view was obstructed.

We do not second guess a trial court's credibility determinations when supported by sufficient evidence. (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1036.) In this case, sufficient evidence supports the conclusion that Deputy Seibert saw a gun in the vehicle.

**DISPOSITION**

The judgment is affirmed.